565 F. Supp. 1044

ASSOCIATED CONSUMERS, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Before WATSON, *Judge.*

Court No. 81-9-01162

(Decided April 13, 1983)

Glad, White and Ferguson (Edward N. Glad at the trial and on the briefs) for the plaintiff.

J. Paul McGrath, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, (Susan Handler-Menahem at the trial and on the briefs) for the defendant.

Lackenbach, Siegel, Marzullo, Presta and Aronson (James E. Siegal and Nancy Dwyer Chapman on the brief) for *amicus curiae*.

WATSON, *Judge:* This case involves the classification of imported merchandise described as "Vise Grips" on the invoice. The merchandise was classified as wrenches under item 648.97 [1] of the Tariff Schedules of the United States (TSUS) and assessed with duty at the rate of 10.8 percent *ad valorem*. Plaintiff contends that the merchandise should be classified as pliers under item 648.85 TSUS,[2] or alternatively, as clamps under Item 649.37 TSUS.[3] Under either one of plaintiff's claimed classifications, the items would be entitled to duty-free treatment under the Generalized System of Preferences.

The Court finds that the plaintiff has failed to establish by a preponderance of the evidence that the classification by the Customs Service was erroneous and that its own claim is correct.

In this case it is necessary to ascertain the common meanings of the tariff provisions in question and analyze this tool in their light. *E. Green and Son* v. *United States,* 59 CCPA 31, C.A.P. 1032, 450 F.2d 1396 (1971). In making its determination of common meaning, the Court has reviewed the case law, examined dictionaries [4] and evaluated the testimony of the witnesses. *See: Schott Optical Glass, Inc.* v. *United States,* 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979). The crucial identifying characteristic of a wrench, which emerges from these sources, is its special ability to fixedly grasp an object and allow the user to exert a twisting or wrenching force. *See: Albert F. Maurer Co.* v. *United States,* 43 CCPA 90, C.A.D. 613 (1956); *United States* v. *Ritter Carlton Co., 30 CCPA 208, C.A.D. 234 (1943).*

On the other hand, pliers are tools of a more generally manipulative nature, not specifically designed to exert a twisting force. They

---

[1] Item 648.97, TSUS, as modified by Proclamation No. 4707:
"648.97          Pipe tools (except cutters), wrenches, and spanners, and
                       parts thereof............................................................................ 10.8% ad val."

[2] A Item 648.85, TSUS:
     A Item          Free"
        648.85
        Other
        (except
        parts).
[3] A Item 639.37, TSUS:
"A Item 649.37     Free"
     Vises and
     clamps (except
     parts of, or
     accessories for,
     machine.
[4] *Audels' New Mechanical Dictionary for Technical Trades* (1960); *Webster's Third New International Dictionary (1963).*

160

At the trial, plaintiff introduced eight exhibits and called one witness. One joint exhibit was introduced by the parties. Defendant called no witnesses nor solely introduced any exhibits.[1]

Plaintiff's witness, Mr. Saul Cohen, was at the time of the trial Senior Vice-President of Merchandising for plaintiff corporation. His testimony indicated that he has been employed by plaintiff for twenty eight (28) years. According to the witness, approximately eighty (80) percent of plaintiff's business is generated by sales to schools and other educational systems (R–7).

Mr. Cohen's testimony and actual demonstration indicated that the merchandise known as "Teaching Typewriter" (Exhibit 1A) and the related programmed cards (Exhibit 1B) were designed for educational purposes. According to the witness, the machine functions by introducing a programmed card containing a mathematical, spelling or other educational type problem. The merchandise user then presses one of the typewriter keys that completes a word or answers a mathematical problem. If the user engages the wrong key the programmed card is immobilized and new problems are not presented to the user. If the user selects a correct answer the programmed card advances presenting a new problem. This process is repeated each time the user gives a correct answer.

Subsequently, the witness described and illustrated the "Touch to Learn" merchandise (Exhibit 2A) and its related cassette (Exhibit 2B).

According to the witness, "Touch to Learn" operates in the same manner as the "Teaching Typewriter", except that it uses programmed cassettes (such as those in Exhibit 2B) instead of programmed cards. Basically, when the user engages the machine it presents a problem. If the correct response is made, the cassette automatically moves to the next problem. If the wrong answer is made, the cassette will not present a subsequent problem. The problems on the cassette are in different combinations to teach the child, for example, that two and one equal three, etc. The sequence of problems increases in degree of difficulty as the cassette progresses. The principles behind the "Touch to Learn" and the "Teaching Typewriter" are the same (R. 15–16).

Plaintiff's Exhibit 3A ("Touch and Match") is primarily intended to teach young children reading readiness. Normally a child's awareness starts by identifying objects. Most of the programs for "Touch and Match" are on a very young level, and consist of

---

[1] The following exhibits were introduced in evidence:

*Joint Exhibit*, Defendant's requests for admissions, and plaintiff's responses thereto.

*Plaintiff's Exhibit 1A*—An article designated "Teaching Typewriter" (One of the articles at issue).

*Plaintiff's Exhibit 1B*—A package of pre-programmed cards, used in conjunction with the "Teaching Typewriter".

*Plaintiff's Exhibit 2A*—An article designated "Touch to Learn" (one of the articles at issue).

*Plaintiff's Exhibit 2B*—A cassette program used with the "Touch to Learn" article.

*Plaintiff's Exhibit 3A*—An article identified as "Touch and Match" (one of the articles at issue).

*Plaintiff's Exhibit 3B*—A series of program cards used with "Touch and Match".

*Plaintiff's Exhibit 4*—A list of additional programs available for the "Teaching Typewriter" and for "Touch to Learn".

*Plaintiff's Exhibit 5*—A photocopy of the 1971 Childcraft Education Corporation Catalog, "Toys that Teach".

matching objects, shapes, etc. Programmed cards (such as those in Exhibit 3B) are inserted into the machine thereby presenting the child with a problem to identify what objects or shapes are complementary. When the child gives a correct answer the machine makes a noise and a bulb lights (R. 17–18). Blank program cards are available for teachers, parents and others so that they may insert their own programs for children who may have a particular learning problem.

Mr. Cohen's testimony further indicates that the imported machines could not function without a programmed card or cassette and that the particular programs were progressive in degree of learning difficulty (R. 19–21). Plaintiff sells programmed cards other than those included at the initial purchase for the "Teaching Typewriter" and the "Touch to Learn".

The witness stated that the articles in question were merchandised through a school catalog and through a force of sales representatives who conducted workshops in schools and with teachers to demonstrate the merchandise. Additionally, Childcraft attempted to sell these articles through its stores, a consumer catalog, and by public distribution through retail stores (R. 22–23).

The witness also identified Plaintiff's Exhibit 5 as Childcraft's 1971 Christmas Catalogue, "Toys That Teach", and testified that not all items advertised in the catalog were intended for play or amusement (R. 24). The "Touch to Learn" and "Teaching Typewriter" articles were advertised in the catalog.

The witness testified that he has observed children using the imported merchandise in schools and that the children were enjoying themselves.

In his closing testimony the witness stated that it is necessary to interest or amuse children to a certain extent, if possible, to motivate them to use any article.

A review of the evidence of record, including trial testimony and illustrative samples, indicates that defendant should have judgment in this action.

Plaintiff has failed to demonstrate by the evidence of record that the imported merchandise is chiefly used for educational purposes and not chiefly used for the amusement of children. *B. Shackman & Co.* v. *United States,* 67 Cust. Ct. 372, C.D. 4300 (1971); *Globemaster Midwest, Inc.* v. *United States,* 67 Cust. Ct. 539, R.D. 11758, 337 F. Supp. 465 (1971). Plaintiff has also failed to overcome the presumption of correctness which favors customs' classification. *Atlantic Aluminum & Metal Distribution, Inc.* v. *United States,* 47 CCPA 88, C.A.D. 735 (1960); *J. E. Bernard Co.* v. *United States,* 81 Cust. Ct. 60, C.D. 4766 (1978).

Under TSUS, a "toy" for the purposes of the tariff schedules is any article chiefly used for the amusement of children or adults (schedule 7, part 5, subpart E, headnote 2 (1971)). Thus, plaintiff's burden is to prove that the chief purpose of the merchandise in

issue is not amusement. *United States* v. *New York Merchandise Co.*, 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970). Plaintiff's case ultimately relies upon the theory that the chief utilitarian purpose of the imported merchandise is that of education of children and, that any amusement derived therefrom is merely incidental to its chief use. When amusement and utility become locked in controversy, the question becomes one of determining whether the amusement is incidental to the utilitarian purpose, or the utilitarian purpose incidental to the amusement. *Ideal Toy Corp.* v. *United States*, 78 Cust. Ct. 28, C.D. 4688 (1977).

Plaintiff's only witness at the trial did not have a background as an educator or in educational psychology although he did indicate that he worked with teachers and educational consultants as well as people who are engaged in the field of education of pre-school children. Although it has been held that executives concerned with selling, distributing, ordering and promoting an article have to know the article's chief use and may properly give testimony as to such chief use, *Novelty Import Co.* v. *United States,* 60 Cust. Ct. 574, C.D. 3462, 285 F. Supp. 160 (1968); *B. Shackman & Co.* v. *United States, supra,* and the uncontradicted testimony of a single, competent, and credible witness may be sufficient to discharge the burden of proof on a chief use issue, *Davis Products, Inc.* v. *United States,* 59 Cust. Ct. 226, C.D. 3127 (1967), the court in the present case finds that the testimony of Mr. Cohen is insufficient to rebut the strong presumption that favors the government classification.

While the testimony of the witness indicated that in his belief the main purpose of the merchandise in issue was to teach children he also stated that he had observed children using the merchandise in school and that the children were enjoying themselves. He explained his interpretation of the term enjoyment to be:

> * * * Young children, unless they are really new, have ideas, and the environment [sic] around them every day is an adventure and anything at all might be—it the driest subject—an amusement to a child. But, I guess, as we grow older, we begin to be influnced [sic] by things that happen to us, and so maybe we learn to hate mathematics or we learn to—whatever. The fact is that any thing mechanical would certainly "amuse' somebody. It moves. Certainly, a young child—Well, there is nothing funny about it, nothing dances and there are no cymbals that are played, no music response. It was not a toy that you could turn into other things. It did simply one thing: it taught or attempted to teach a child a very rudimentary fact or facts for which it was intended, and anything will amuse a child, but I think that is a rather broad definition. (R. 30).

Thus, the witness admitted that the basis of the merchandise was amusement of a young child with the hopeful purpose that the child would learn something while being amused. An article that has some incidental educational value or is used in school does not

remove it from the toy category, *United States,* v. *Meier & Frank Co.,* 5 Ct. Cust. Appls. 208, T.D. 34330 (1914); *B. Shackman & Co.* v. *United States, supra.*

Moreover, in toy cases especially, a sample is a potent witness, *Wilson's Customs Clearance, Inc.* v. *United States,* 59 Cust. Ct. 36, C.D. 3061 (1967). The court in viewing a demonstration of the merchandise at trial and reviewing the exhibits in chambers is of the solid conclusion that the main effect thereof is the amusement of children and any educational value is merely incidental thereto. Moreover, if plaintiff's position were sustained then almost any toy could be deemed educational in nature as most experiences are new to the young child's receptive mind and he learns by the new experiences.

Exhibit 5 is a copy of plaintiff's 1971 catalog which is entitled "Christmas Catalogue Toys that Teach". The merchandise in issue, "Touch and Match" is listed on page 29 and "Touch to Learn" is listed on page 30. The merchandise "Teaching Typewriter" is not listed in this catalog. A review of this forty seven (47) page catalog indictes that it is essentially a toy catalog the like of which is sent to retail outlets such as Gimbels and F. A. O. Schwarz Co., famous toy stores. Articles listed in this catalog appear to be only for the basic purpose of the amusement of children. The fact that the articles were marketed as toys, while not determinative, is of obvious probative value. *Montgomery Ward & Co.* v. *United States,* 62 Cust. Ct. 718, C.D. 3853 (1969).

In conclusion, the court in reviewing the testimony given at trial and the samples submitted therein finds that plaintiff has failed to sustain its burden of proving that the defendant's classification is in error and that its own claimed classification is correct. *Hawaiian Motor Co.* v. *United States,* 82 Cust. Ct. 70, C.D. 4790, 473 F. Supp. 787 (1979), *aff'd.,* 67 CCPA 42, C.A.D. 1241, 617 F.2d 286 (1980); *Merry Mary Fabrics, Inc.* v. *United States,* 1 CIT 13 1980).

Accordingly, the classification of the district director at the port of New York is sustained and the complaint of plaintiff is dismissed.