CHILDCRAFT EDUCATION
CORP., Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 83–1428.

United States Court of Appeals,
Federal Circuit.

Aug. 29, 1984.

Peter J. Fitch, New York City, argued for appellant.

Judith M. Barzilay, New York City, argued for appellee. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, New York City, Attorney in Charge International Trade Field Office.

Before MARKEY, Chief Judge, and FRIEDMAN and RICH, Circuit Judges.

RICH, Circuit Judge.

Appellant Childcraft Education Corp. (Childcraft) appeals from the decision of the Court of International Trade (CIT), 572 F.Supp. 1275 (1983) which upheld the classification of the imported merchandise as toys, Item 737.90 of the Tariff Schedules of the United States (TSUS) instead of as "Machines not specially provided for," Item 678.50 TSUS, or "Electrical articles ... not specially provided for," Item 688.40 TSUS, as claimed. We reverse.

*Background*

The imports are articles primarily used by children, and are respectively known as "Teaching Typewriters," "Touch to Learn," and "Touch and Match." The Teaching Typewriter requires the use of programmed cards, each of which presents a problem to be solved, such as a simple

addition or word completion exercise. When a child presses the key or keys representing the correct answer, the card moves forward out of the machine. Additional programs teach vocabulary, phonograms, and mathematics; and progressively more difficult program cards are available for each of these subject categories. The Touch to Learn article operates on the same principle but uses a programmed cassette in place of the card, and a correct answer advances the cassette to the next problem. Available programs teach, for example, counting, telling time, addition, subtraction and multiplication. The Touch and Match article teaches reading readiness. It utilizes a card having an item appearing on its left side which a child must match with the corresponding item on the card's right side, by simultaneously pressing the appropriate buttons. This article is supplied with a blank card to enable teachers to create individualized exercises for children with specific learning problems. A correct choice causes the machine to produce a noise and light a light. None of these articles will function in its intended manner without the card or cassette programs.

The Customs Service classified these articles as toys, TSUS 737.90, and the CIT affirmed. The primary issue, as formulated by the CIT, and the affirmative determination which formed the basis for its upholding of the classification of these articles as toys, was whether their chief use was for the *amusement* of children and adults, rather than for the *education* of pre-school children. Childcraft contends on appeal that these articles are primarily used for educational purposes and, therefore, that TSUS 678.50 or 688.40 would be correct. The government conceded below and at argument before this court that if the merchandise is not classifiable under TSUS 737.90, that Childcraft's suggested classification in TSUS 678.50 would be proper.

## OPINION

The meaning of terms, such as "toy," is a question of law. *Daw Industries, Inc. v.*

*United States*, 714 F.2d 1140, 1141 (Fed. Cir.1983). Both parties, as well as the CIT, relied upon the definition set forth in the TSUS (Schedule 7, part 5, subpart E, headnote 2) as adopted by a line of cases including *B. Shackman & Co. v. United States*, 67 Cust.Ct. 372, 380, C.D. 4300, (1971), that a toy is an article "chiefly used for the amusement of children or adults."

■ It is incumbent upon the importer in a case such as this to overcome the presumption of correctness which attaches to a classification by the Customs Service, and the importer has the burden of proving that the classification is incorrect, though the importer need not always prove that its own proposed classification is correct. *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed.Cir.1984).

■ Whether particular items, such as the articles at issue here, fit the definition of toy is a question of fact reviewed under the clearly erroneous standard. *Daw Industries*, 714 F.2d at 1142. A finding is " 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Thus, in order to prevail, Childcraft must demonstrate clear error in the CIT's finding, based on the record below, that the imported articles are chiefly used for amusement and are thus toys.

The evidence of record consists primarily of witness testimony, a photocopy of one of Childcraft's catalogs, the three imported articles, and the programmed cards and cassettes used with these articles. As the CIT opinion notes, only one witness testified, and that was Childcraft's Senior Vice-President of Merchandising. The government called no witnesses.

Childcraft's witness testified that his company was primarily engaged in selling teaching aids and school supplies, and that he worked with educational consultants,

teachers, and others in the field of pre-school education. His further testimony was that approximately eighty per cent of Childcraft's business was generated by sales to schools and educational systems. Additional testimony indicated that the machines could not function without their programmed cards or cassettes, and that particular programs were progressive in degree of learning difficulty. The imported articles were merchandised through school catalogs and by sales representatives who conducted workshops with school teachers to demonstrate the items. Other sales were generated by public distribution through retail stores.

Due to the nature of this case, our holding as to whether or not the subject articles are correctly classified as toys depends on the facts adduced below. Thus, the CIT correctly couched the determinative issue before us in terms set forth by the former Customs Court in *Ideal Toy Corp. v. United States,* 78 Cust.Ct. 28, 33, C.D. 4688 (1977):

> When amusement and utility become locked in controversy, the question becomes one of determining whether the amusement is incidental to the utilitarian purpose, or the utility purpose incidental to the amusement [citation omitted].

In finding that Childcraft "failed to demonstrate by the evidence of record that the imported merchandise is chiefly used for educational purposes and not chiefly used for the amusement of children," the CIT relied overmuch on certain comments by the witness that "he had observed children using the merchandise in school and that the children were enjoying themselves." The CIT erroneously found, from the following quoted testimony, an admission "that the basis [sic] of the merchandise was amusement of a young child with the hopeful purpose that the child would learn something while being amused." The quoted testimony was:

> Young children, unless they are really new, have ideas, and the enviornment [sic] around them every day is an adventure and anything at all might be—it the

driest subject—an amusement to a child. But, I guess, as we grow older, we begin to be influnced [sic] by things that happen to us, and so maybe we learn to hate mathematics or we learn to—whatever. The fact is that anything mechanical would certainly "amuse" somebody. It moves. Certainly, a young child—Well, there is nothing funny about it, nothing dances and there are no cymbals that are played, no music response. It was not a toy that you could turn into other things. It did simply one thing: it taught or attempted to teach a child a very rudimentary fact or facts for which it was intended, and anything will amuse a child, but I think that is a rather broad definition.

It is evident to us from this transcript excerpt that the witness stated only that the imported articles were not "funny," were not toys that could be turned "into other things" through play, and that they did one thing—i.e., "taught or attempted to teach" children. That the witness also recognized that "anything will amuse a child" is hardly persuasive, as found by the CIT, that the chief purpose of the article was amusement. Indeed, our review of this testimony, and the entire record, leads us to the opposite conclusion. In response to the question, "Would it be fair to say that if a child was not amused by such a device, they would just tend to ignore it?", the witness said "That holds true for everything." If a child disliked using the imported articles, it is reasonable to surmise that their use would be infrequent or less than optimally effective. Thus, we conclude that this testimony of the witness is not sufficient to support the CIT's finding as to the article's chief purpose.

Previous decisions by our predecessor court and the Customs Court help evaluate the witness' statements in a more useful, decision-making context. For example, in *United States v. Louis Wolf & Co.,* 26 CCPA 243, 249, C.D. 23 (1938), the court held that microscopes classified as toys were not toys.

From the evidence in the case and the exhibits before us we think the merchandise at bar is not chiefly used for the *amusement* of children because, as we have hereinbefore stated, the interest which children display in the use of these microscope sets is not the character of "amusement" which a child gets from a toy or from an article which is essentially a plaything.

Devices known as "educational number learners" and "geometrical sorting boards" were held to be chiefly used for educational purposes in *B. Shackman & Co.,* supra. The evidence presented in *Shackman* indicated that the children using these items were "excited" rather than amused, and learned from them. See also the cases cited in *Shackman,* 67 Cust.Ct. at 381–383. Thus, mere amusement does not necessarily require a finding that an item's chief use is noneducational.

The testimony evidence presented in *Shackman* may have been more clear and compelling than that presented in the instant case, however. Unlike Childcraft, which presented one corporate witness, Shackman presented six witnesses, four of whom were experts in the field of education and the two others were involved in the importation, sale, and distribution of the imported articles. The CIT in the instant case did correctly recognize the premise that "importers, merchants and executives concerned with ordering, selling, distributing and promoting an article have to know the article's chief use and may properly give testimony as to such use." *Shackman,* 67 Cust.Ct. at 383; *see also, International Customs Service, Inc. v. United States,* 63 Cust.Ct. 255, 259, C.D. 3905 (1969) and *Novelty Import Co. v. United States,* 60 Cust.Ct. 574, 582, C.D. 3462, 285 F.Supp. 160 (1968). Yet the CIT erroneously discounted Childcraft's witness' uncontradicted testimony, in view of its finding based on his testimony, as discussed above.

The CIT also largely relied on Exhibit 5 in the case, which was a copy of Childcraft's 1971 Catalog entitled "Christmas Catalogue Toys That Teach." The CIT found that this catalog was "essentially a toy catalog the like of which is sent to retail outlets such as Gimbels and F.A.O. Schwartz Co., famous toy stores. Articles listed in this catalog appear to be only for the basic purpose of the amusement of children." While the CIT is correct in its observation that the fact that the "articles were marketed as toys, while not determinative, is of obvious probative value," citing *Montgomery Ward & Co. v. United States,* 62 Cust.Ct. 718, 724, C.D. 3853 (1969), Childcraft calls our attention to other aspects of the catalog which diminish its probative value. Among the other articles also included in the catalog were items which could not be classified as toys, such as furniture, play pens, musical instruments, flashlights, clocks, etc. Additionally, the advertising text accompanying the articles at issue describes each of them as a "teaching machine."

The type of catalog advertising present in the *Montgomery Ward* case is distinguishable from the Childcraft catalog, particularly in view of the fact that the former catalog listed the imported articles (toy musical instruments) in a special section, with an index "adding that '[o]nly toys are listed here …'." *Montgomery Ward,* 62 Cust.Ct. at 724. In contradistinction, Childcraft presents its imported articles as teaching machines, rather than as toys. Furthermore, the decision in *Montgomery Ward* was largely predicated on testimony that the imported articles were incapable of use for serious musical study, and the decision was further buttressed by a clear line of cases dealing with toy musical instruments.

In reaching our decision we give due deference to the CIT's statement that "in viewing a demonstration of the merchandise at trial and reviewing the exhibits in chambers [it] is of the solid conclusion that the main effect thereof is the amusement of children and any educational value is merely incidental thereto." However, the exhibit evidence of record, when considered in its entirety with the testimony of child-

craft's witness, does not support the CIT's finding that the chief use of the imported article is amusement.

 To summarize, in view of Childcraft's proposed classification and the government's concession that this would be correct, we hold that the imported articles are properly classifiable under Item 678.50 TSUS, machines not specially provided for. The decision of the CIT is *reversed*.

REVERSED.