# United States Court of Appeals for the Federal Circuit

2006-1459

HOME DEPOT U.S.A., INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Christopher Dove, Locke Liddell & Sapp LLP, of Houston, Texas, argued for plaintiff-appellee. On the brief were Adam J. Thurston, Eisenberg Raizman Thurston & Wong LLP, of Los Angeles, California; David Stepp, Bryan Cave, LLP, of Santa Monica, California; and Kelly A. Slater, of Washington, DC. Of counsel was Joseph H. Heckendorn, Knechtel, Demeur & Samlan, of Chicago, Illinois.

Edward F. Kenny, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellant. On the brief was Peter D. Keisler, Assistant Attorney General, of Washington, DC; Barbara S. Williams, Attorney in Charge; and Jack S. Rockafellow, Attorney, of New York, New York. Of counsel on the brief was Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Gregory W. Carman

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2006-1459

HOME DEPOT U.S.A., INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED:  June 21, 2007

_____

Before MAYER, RADER, and PROST, Circuit Judges.

MAYER, Circuit Judge.

The United States Customs and Border Protection ("Customs") appeals the judgment of the United States Court of International Trade reclassifying 105 models of light fixtures under subheading 9405.10.80 of the Harmonized Tariff Schedule of the United States ("HTSUS").  Home Depot, U.S.A., Inc. v. United States, 427 F. Supp. 2d 1278 (Ct. Int'l Trade 2006).  We affirm.

## Background

This case initially involved the tariff classification of 124 models of light fixtures imported by The Home Depot, U.S.A., Inc. ("Home Depot").  Customs classified these light fixtures under HTSUS subheading 9405.10.60, which is reserved for light fixtures made of a base metal other than brass and imposes a 7.6 percent duty.  Home Depot

protested the classifications, claiming that the subject goods should be classified under HTSUS subheading 9405.10.80 as light fixtures made of something other than base metal, and should thus only be subject to a 3.9 percent duty.

After Customs denied its protests, Home Depot filed a series of actions in the Court of International Trade that were eventually consolidated into the single case now before us. Following trial, the court determined that Customs incorrectly classified most of the light fixtures at issue. Specifically, it found that 105 of the models at issue should be reclassified under HTSUS subheading 9405.10.80 because they derived their essential character from their glass components. Home Depot, 427 F. Supp. 2d at 1293-1358. Customs appealed with respect to the reclassified goods. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

Discussion

We apply de novo review to questions of law, including the interpretation of HTSUS terms. Rollerblade, Inc. v. United States, 282 F.3d 1349, 1352 (Fed. Cir. 2002); Better Home Plastics Corp. v. United States, 119 F.3d 969, 971 (Fed. Cir. 1997). Conversely, the ultimate classification of the subject goods is the result of a factual inquiry and is reviewed for clear error. Pillsbury Co. v. United States, 431 F.3d 1377, 1379 (Fed. Cir. 2005). Although the trial court was required to give deference to Customs' classification decisions, see Bauer Nike Hockey U.S.A., Inc. v. United States, 393 F.3d 1246, 1249-50 (Fed. Cir. 2004), it is nonetheless ultimately "charged with the duty to 'reach the correct [classification] decision.'" Better Home Plastics, 119 F.3d at 971 (quoting Rollerblade, 112 F.3d at 484).

The HTSUS is organized by headings, each of which covers a general category of merchandise. Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). Each heading has one or more subheadings that "provide a more particularized segregation of the goods within each category." Id. The relevant HTSUS headings and subheadings are as follows:

| 9405 | Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: |
|---|---|
| 9405.10 | Chandeliers and other electric ceiling or wall lighting fittings, excluding those of a kind used for lighting public open spaces or thoroughfares: |
| | Of base metal: |
| 9405.10.40 | Of brass ……………………… 3.9% ad valorem |
| 9405.10.60 | Other …………………………. 7.6% ad valorem |
| 9405.10.80 | Other ………………………………… 3.9% ad valorem |

There is no dispute that the proper first-level subheading for the subject goods is 9405.10. See Home Depot, 427 F. Supp. 2d at 1283. At issue here is which of two potential second-level subheadings covers the imported light fixtures. Customs originally liquidated the goods under subheading 9405.10.60 as fixtures made of a base metal other than brass; the Court of International Trade reclassified the 105 models at issue under 9405.10.80 as fixtures made of something other than base metal.

To resolve this dispute, we turn to the General Rules of Interpretation ("GRI") to the HTSUS because they govern the classification of imported goods within the HTSUS. Pillsbury, 431 F.3d at 1379. GRI 2(b) instructs that "[t]he classification of goods

consisting of more than one material or substance shall be [determined] according to the principles of rule 3." GRI 3 instructs that if goods can be classified on their face under more than one heading, as is the case here, then classification shall be based upon the following:

> (a)    The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

> (b)    Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

> (c)    When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

GRI 3(a)-(c) (1999).

The two subheadings at issue "each refer to part only of the materials" contained in the subject goods, so they must be "regarded as equally specific" pursuant to GRI 3(a). We must therefore apply GRI 3(b), which instructs that the goods should be classified "as if they consisted of the material or component which gives them their essential character." Although the GRI's do not provide a definition of "essential character," the Explanatory Note (VIII) to GRI 3(b)[*] provides guidance: "The factor which determines essential character will vary as between different kinds of goods. It

---

[*]    Although the Explanatory Notes "do not constitute controlling legislative history," they are nonetheless intended to offer guidance in clarifying the scope of HTSUS subheadings. Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994).

may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." This is known as the "essential character test," see Better Home Plastics, 119 F.3d at 970-71, and the application of this test requires a fact-intensive analysis, see Rollerblade, 112 F.3d at 483.

Customs argues that a light fixture's essential character must be derived from the material that forms its structural framework. A light fixture does not necessarily derive its essential character from its structural framework any more than an office building derives its essential character from the metal beams that hold it erect. Rather, many factors should be considered when determining the essential character of a light fixture, specifically including but not limited to those factors enumerated in Explanatory Note (VIII) to GRI 3(b). Thus, the trial court was correct to look at all of the structural components in determining the essential character of the light fixtures, rather than just focusing on the frame of the imported goods. Having carefully reviewed its comprehensive factual analysis, see Home Depot, 427 F. Supp. 2d at 1293-1359, we find no clear error in its classification determinations, and conclude that it correctly reclassified the 105 models in question as non-metallic light-fixtures under HTSUS subheading 9405.10.80.

## Conclusion

Accordingly, the judgment of the United States Court of International Trade is affirmed.

## AFFIRMED