# United States Court of Appeals for the Federal Circuit

―――――――――――

**IRWIN INDUSTRIAL TOOL COMPANY,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

―――――――――――

2018-1215

―――――――――――

Appeal from the United States Court of International Trade in No. 1:14-cv-00285-CRK, Judge Claire R. Kelly.

―――――――――――

Decided: April 9, 2019

―――――――――――

FRANCES PIERSON HADFIELD, Crowell & Moring, LLP, New York, NY, argued for plaintiff-appellee. Also represented by DANIEL CANNISTRA, Washington, DC.

MATTHEW JAMES GLOVER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by JEANNE DAVIDSON, JOSEPH H. HUNT; AMY RUBIN, GUY EDDON, New York, NY; MICHAEL W. HEYDRICH, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

―――――――――――

Before LOURIE, MAYER, and REYNA, *Circuit Judges.*

LOURIE, *Circuit Judge.*

The United States appeals from the judgment of the United States Court of International Trade ("the Trade Court") granting Irwin Industrial Tool Company's ("Irwin") motion for summary judgment that its imported hand tools are properly classified as pliers, *Irwin Indus. Tool Co. v. United States*, 269 F. Supp. 3d 1294 (Ct. Int'l Trade 2017) ("*Irwin II*"), and interpreting subheading 8204.12.00 and 8203.20.6030 of the Harmonized Tariff Schedule of the United States ("HTSUS"), *Irwin Indus. Tool Co. v. United States*, 222 F. Supp. 3d 1210 (Ct. Int'l Trade 2017) ("*Irwin I*"). Because the imported articles are properly classified as pliers under 8203.20.6030, we affirm.

BACKGROUND

Irwin imported several styles of hand tools, including straight jaw locking pliers, large jaw locking pliers, curved jaw locking pliers with and without wire cutters, and long nose locking pliers with wire cutters. U.S. Customs and Border Protection ("Customs" or "the government") classified Irwin's tools as "wrenches" under subheading 8204.12.00 of the HTSUS and denied each of Irwin's protests to classify them as "pliers." Irwin then filed suit in the Trade Court challenging Customs' classification.

The Trade Court denied the government's motion for summary judgment that the tools are properly classified as wrenches, *Irwin I*, 222 F. Supp. 3d at 1229, but granted Irwin's motion for summary judgment that the tools are properly classified as pliers, *Irwin II*, 269 F. Supp. 3d at 1305. In its response to Irwin's motion, the government moved for reconsideration of the court's order construing the tariff terms, which the court also denied. *Id.* at 1305–06.

The Trade Court first interpreted the term wrenches found in subheading 8204.12.00. It reviewed a series of dictionary definitions and industry standards before concluding that the term wrenches is an *eo nomine* term not controlled by use. The court interpreted wrenches to mean "a hand tool that has a head with jaws or sockets having surfaces adapted to snugly or exactly fit and engage the head of a fastener (such as bolt-head or nut) and a singular handle with which to leverage hand pressure to turn the fastener without damaging the fastener's head." *Irwin I*, 222 F. Supp. 3d at 1221 (footnote omitted).

The Trade Court then conducted a similar analysis for the term pliers in subheading 8203.20.6030 of the HTSUS and found the "common and commercial meaning of 'pliers' refers to a versatile hand tool with two handles and two jaws that are flat or serrated and are on a pivot, which must be squeezed together to enable the tool to grasp an object; the jaws may, or may not, lock together to hold the object while using the tool." *Id*. at 1224.

Following these interpretations, the Trade Court denied the government's motion for summary judgment that the tools at issue are properly classified as wrenches and granted Irwin's motion that the tools are pliers. In the court's view, the undisputed facts demonstrated that the products at issue were pliers within subheading 8203.20.6030 because the tools "1) are versatile hand tools, 2) have two handles, and 3) have two jaws, that are flat or serrated and are on a pivot, which can be squeezed together to enable the tools to grasp an object." *Irwin II*, 269 F. Supp. 3d at 1302.

The government appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

The government argues that the Trade Court erred in classifying the imported goods under 8203.20.6030 as

pliers.  According to the government, the Irwin tools are wrenches, as a wrench is a "tool used to grasp an object and then turn or twist it (*i.e.*, apply torque)."  Appellant's Br. 17.  In support of this view, the government cites dictionary definitions that define wrenches as tools "used for holding, twisting, or turning a bolt, nut, screwhead, pipe or other object."  *Id.* at 18 (citing *Wrench*, Webster's Third New International Dictionary 2639 (3d ed. 2002), J.A. 532).  The government further emphasizes that wrenches "are designed to carry out the twisting action described by the verb 'wrench.'"  *Id.* at 24.

Irwin responds that the Trade Court's definition of wrench, which did not recite twisting action, was well-supported by both dictionary definitions and industry standards.  Irwin maintains that the term wrench is an *eo nomine* term and is not defined by use.  As an example, Irwin suggests that under the government's definition, a crowbar would become a wrench because of the action applied.  Appellee's Br. 29.

Similar to its argument for the term wrench, the government contends that we should consider use in defining the term pliers and that pliers "refer[] to pincers with two handles and jaws adapted for manipulating small objects or for bending and shaping wire, sometimes including a wire cutter, and whose grasp is dependent upon maintaining continuous hand pressure." Appellant's Br. 36.  According to the government, locking tools should not be included in the definition of pliers because "the primary purpose" of a locking mechanism is "to permit the maximum application of torque," "which is the function of a wrench."  *Id.* at 37.

Irwin counters that heading 8203 is not defined by use and that the Trade Court's interpretation relied on a series of accepted dictionary definitions. Appellee's Br. 30–31. Irwin also maintains that the government has not offered

evidence of a different commercial meaning that would justify a departure from the court's definition. *Id.* at 33.

Imported merchandise is classified under the HTSUS. "The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).

A classification decision requires two steps. *Id.* The first step is the interpretation of the proper meaning of the relevant tariff provisions, which we review without deference. *Id.*; *see also Roche Vitamins, Inc. v. United States*, 772 F.3d 728, 730 (Fed. Cir. 2014) (citing *Home Depot U.S.A., Inc. v. United States*, 491 F.3d 1334, 1335 (Fed. Cir. 2007)). Although we review the Trade Court's decision *de novo*, "we give great weight to the informed opinion of the [court] . . . and it is nearly always the starting point of our analysis." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1162 (Fed. Cir. 2017) (second alteration in original) (quoting *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016)).

For the second step of the inquiry, we determine whether the merchandise at issue falls within a particular tariff provision as properly interpreted. *Orlando Food*, 140 F.3d at 1439. We review the Trade Court's grant of summary judgment without deference but review its fact findings for clear error. *Home Depot*, 491 F.3d at 1335.

We begin our analysis by construing the tariff terms at issue. The two sections of the HTSUS that are relevant here are 8204.12.00, which governs wrenches, and 8203.20.6030, which governs pliers.

8204.12.00 reads as follows:

8204    Hand-operated spanners and wrenches (including torque meter wrenches but not including

tap wrenches); socket wrenches, with or without handles, drives or extensions; base metal parts thereof:

. . .

8204.12.00 Adjustable, and parts thereof

HTSUS (2017).

8203.20.6030 reads as follows:

8203    Files, rasps, pliers (including cutting pliers), pincers, tweezers, metal cutting shears, pipe cutters, bolt cutters, perforating punches and similar handtools, and base metal parts thereof:

8203.20    Pliers (including cutting pliers), pincers, tweezers and similar tools, and parts thereof:

. . .

8203.20.60    Other (except parts)

8203.20.6030        Pliers

*Id.*

Our analysis is governed by the principles set forth in the General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation. *See Orlando Food,* 140 F.3d at 1439. The GRIs are applied in numerical order, and a court may only turn to subsequent GRIs if the proper classification of the imported goods cannot be accomplished by reference to a preceding GRI. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999); *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998). GRI 1 provides that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the [remaining GRIs]."

"Absent contrary legislative intent," we construe HTSUS terms "according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss*, 195 F.3d at 1379 (citing *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1576 (Fed. Cir. 1989)). In interpreting a heading, "[a] court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Id.* (citing *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999)).

"An *eo nomine* designation, with no terms of limitation, will ordinarily include all forms of the named article." *Carl Zeiss*, 195 F.3d at 1379 (brackets omitted) (quoting *Hayes-Sammons Chem. Co. v. United States*, 55 C.C.P.A. 69, 75 (1968)). "[A] use limitation should not be read into an *eo nomine* provision unless the name itself inherently suggests a type of use." *Id.* (citing *Pistorino & Co. v. United States*, 599 F.2d 444, 445 (C.C.P.A. 1979); then citing *United States v. Quon Quon Co.*, 46 C.C.P.A. 70, 72–73 (1959); and then citing *F.W. Myers & Co. v. United States*, 24 Ct. Cust. 178, 184–85 (1950)).

We agree with Irwin and the Trade Court that Irwin's tools are properly classified as pliers under heading 8203.20.6030 and that the term pliers is not defined by use. The term pliers refers to a versatile hand tool with two handles and two jaws that are flat or serrated and are on a pivot, which must be squeezed together to enable the tool to grasp an object. Several definitions of record describe pliers in this way. *See Pliers*, McGraw Hill Dictionary of Scientific and Technical Terms (6th ed. 2003), J.A. 631; *Irwin I*, 222 F. Supp. 3d at 1221–22.

Industry guidance further refines that definition. The American Standards for Mechanical Engineering ("ASME") standards detail several types of pliers, including locking pliers, pliers with serrated jaws, and pliers with smooth jaws, but all pliers described in the ASME

standards have two handles and two jaws on a pivot.  J.A. 143–46.  Another industry publication specifically contemplates locking pliers as a subtype of pliers with many functions.  Guide to Hand Tools: Selection, Safety Tips, Proper Use and Care 2-6 (Hand Tools Inst. 4th ed. 2007), J.A. 562.  Locking pliers are described as unable to replace "open-end or box wrenches" because their use may damage fittings or fasteners.  *Id.*

Accordingly, we adopt the Trade Court's definition of the term pliers in subheading 8203.60.2030 to mean a versatile hand tool with two handles and two jaws that are flat or serrated and are on a pivot, which must be squeezed together to enable the tool to grasp an object.  *See Irwin I*, 222 F. Supp. 3d at 1224.  The government does not contest that Irwin's tools should be classified as pliers under the above definition.  Reply Br. 3.

On the other hand, the dictionary definitions of record describe a wrench as a hand tool consisting of a metal bar or lever with adjustable jaws, lugs, or sockets either at the end or between the ends that is used for holding, twisting or turning a bolt, nut screw head, pipe, or other object.  *See Wrench,* Webster's Third New International Dictionary 2639 (3d ed. 2002), J.A. 532; *Irwin I*, 222 F. Supp. 3d at 1217–18.

The ASME standard for adjustable wrenches explains that wrenches consist "essentially of a frame (fixed jaw and handle), a moveable jaw, and a jaw opening adjustment mechanism." J.A. 160.  Every wrench depicted in ASME's chapter on adjustable wrenches has only one handle.  J.A. 161, 165.  Another industry source, Guide to Hand Tools: Selection, Safety Tips, Proper Use and Care 1-1 (Hand Tools Inst. 4th ed. 2007), J.A. 553, explains that "[w]renches are designed for holding and turning nuts, bolts, cap screws, plugs and various threaded parts."

Accordingly, in view of the discussed dictionary definitions and industry sources, the term wrenches in HTSUS

subheading 8204.12.00, as determined by the Trade Court, is an *eo nomine* term not defined by use, which has the following definition:  a hand tool that has a head with jaws or sockets having surfaces adapted to snugly or exactly fit and engage the head of a fastener (such as a bolt-head or nut) and a frame with a singular handle with which to leverage hand pressure to turn the fastener without damaging the fastener's head.  *See Irwin I*, 222 F. Supp. 3d at 1221.  The government agrees that under this definition the tools at issue are not properly classified as wrenches.  Reply Br. 3.

The government maintains that the terms pliers and wrenches both inherently suggest their use.  Appellant's Br. 24–25.  To be sure, design elements for both pliers and wrenches support their specific uses.  Wrenches have jaws or sockets, for example, that allow them to be used to hold and turn nuts or fasteners.  Similarly, pliers have jaws that allow a user to grasp an object.  But merchandise may "possess[] some unique features relat[ing] to its intended use" without those features transforming its identity and creating a use limitation.  *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 646 (Fed. Cir. 2013); *see Carl Zeiss*, 195 F.3d at 1379 (holding that, although the microscopes at issue were exclusively used for surgery, this was "irrelevant to the question whether [the products fell] under the *eo nomine* provision 'compound optical microscope.'").  Even though the record suggests that the tools may be *designed* for a particular use, we determine that the language of the particular headings here does not imply that use or design is a defining characteristic.

For example, the ASME standards describe pliers in terms of their physical features, not their use.  The standards discuss pliers in groups, categorizing them based on the shape and texture of the clamping surface.  J.A. 143–144 (listing pliers with straight jaws, curved jaws, smooth jaws, clamps, and long noses).  The standards detail the physical design of plier handles as "free from rough edges

and sharp corners," with smooth, knurled, or impressed hand-gripping surfaces. J.A. 144.

Further, another industry source describes pliers as versatile and "adaptable for many jobs," Guide to Hand Tools: Selection, Safety Tips, Proper Use and Care 2-1 (Hand Tools Inst. 4th ed. 2007), J.A. 560, undercutting the government's claim that use is an important consideration for the definition of pliers. That same publication describes a series of pliers in terms of their physical attributes, including head and handle design, J.A. 560–62, and describes locking pliers as a type of pliers with multiple functions, J.A. 562.

Likewise, the ASME standards describe wrenches in terms of their physical characteristics, not their use, prescribing the "angle of the opening of the jaw" and that a wrench may optionally have a "moveable, jaw-locking device." J.A. 160. ASME further provides a table of "[w]rench [p]roperties," but none of these properties relates to use. J.A. 162. On this record, it is clear that use is not a defining feature of pliers or wrenches.

Moreover, headings 8203 and 8204 are unlike provisions for which we have considered use. Neither heading contains terms that we have interpreted to signal use provisions. *Cf. Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1313 & n.7 (Fed. Cir. 2003) (holding that the tariff term "of a kind" in the subheading "articles of a kind normally carried in the pocket or in the handbag" was a use provision). Nor do the terms in the headings inherently suggest use. *Cf. Orlando Food*, 140 F.3d at 1441 (holding that "preparation" in the tariff term "Sauces and preparations therefor" was controlled by use because the inclusion of the term "preparation" contemplated that some of the covered products would "be used to make sauces").

The government's use argument is based in large part on the Trade Court's decision in *Associated Consumers v. United States*, 565 F. Supp. 1044 (Ct. Int'l Trade), *aff'd*, 727

F.2d 1120 (Fed. Cir. 1983) (Table), where it interpreted the meaning of both wrenches and pliers under Item 648.97 of the Tariff Schedules of the United States ("TSUS"). However, we are of course not bound by any definitions of wrenches and pliers in *Associated Consumers* because that was a decision of a court that is not binding on us, and that case was under a previous statute not applicable in this case. *See Mitsubishi Int'l Corp. v. United States*, 182 F.3d 884, 886 (Fed. Cir. 1999). The provisions interpreted by the *Associated Consumers* court are not identical to those at issue here, and thus that opinion carries limited persuasive weight. *See Marubeni Am. Corp. v. United States*, 35 F.3d 530, 533 (Fed. Cir. 1994). Moreover, *Associated Consumers* emphasized the twisting function of wrenches, in contrast to pliers, and that distinction is consistent with the Trade Court's decision in this case and our affirmance of that decision.

The government does not dispute that Irwin's tools are properly classified as pliers under the Trade Court's definitions, which we have adopted here. Reply Br. 3. We therefore need not discuss in detail the nature of Irwin's tools and analyze whether the tools fit into those definitions. Accordingly, we conclude that the Trade Court did not err in granting Irwin's motion for summary judgment that the tools at issue are properly classified as pliers.

CONCLUSION

In sum, we affirm the Trade Court's interpretations of the term "wrenches" in 8204.12.00 and "pliers" in 8203.20.6030. Under those interpretations, Irwin's tools are properly classified as pliers, and we affirm the judgment of the Trade Court.

**AFFIRMED**