Slip Op. 17-41

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| IRWIN INDUSTRIAL TOOL COMPANY,<br><br>   **Plaintiff,**<br><br>**v.**<br><br>UNITED STATES,<br><br>   **Defendant.** | **Before: Claire R. Kelly, Judge**<br><br>**Court No. 14-00285** |

## OPINION

[Denying Defendant's motion for summary judgment.]

Dated: April 12, 2017

Frances Pierson Hadfield, Crowell & Moring LLP, of New York, NY, and Daniel J. Cannistra, Crowell & Moring LLP, of Washington, DC, for plaintiff.

Guy R. Eddon and Jamie L. Shookman, Trial Attorneys, U.S. Department of Justice, International Trade Field Office, of New York, NY, for defendant. With them on the brief were Chad A. Readler, Acting Assistant Attorney General, and Amy M. Rubin, Assistant Director. Of counsel on the brief was Michael W. Heydrich, Office of Assistant Chief Counsel, U.S. Customs and Border Protection.

Kelly, Judge: The case before the court involves the classification of various hand tools, referred to by the Plaintiff, Irwin Industrial Tools, as locking pliers. Am. Compl. ¶ 15, May 4, 2015, ECF No. 13 ("Am. Compl."). Defendant, United States Customs and Border Protection ("CBP" or "Customs"), moved for summary judgment on January 6, 2017. Def.'s Mot. Summ. J., Jan. 6, 2017, ECF No. 43 ("Def.'s Mot."); Mem. Supp. Def.'s Mot. Summ. J., Jan. 6, 2017, ECF No. 43 ("Def.'s Br."). Plaintiff opposes this motion.

Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., Feb. 6, 2017, ECF No. 44 ("Pl.'s Resp."). For the reasons that follow, Defendant's motion is denied.

## BACKGROUND

The dispute concerns the proper classification of four styles of Plaintiff's hand tools: "large jaw locking pliers," "curved jaw locking pliers," "long nose locking pliers with wire cutter," and "curved jaw locking pliers with wire cutter." Am. Compl. ¶¶ 17(A)–(D); Def.'s Rule 56.3 Statement of Material Facts ¶ 1, Jan. 6, 2017, ECF No. 43-1 ("Def.'s 56.3 Statement"); see Am. Compl. Exs. B–E. Plaintiff is the importer of record of the subject merchandise in the 46 entries at issue, which entered between the period of November 11, 2012 and June 11, 2013. Am. Compl. ¶¶ 3, 7. CBP liquidated all subject entries under subheading 8204.12.00, Harmonized Tariff Schedule of the United States (2013) ("HTSUS"),[1] which provides as follows:

> Hand-operated spanners and wrenches (including torque meter wrenches but not including tap wrenches); socket wrenches, with or without handles, drives or extensions; base metal parts thereof: Hand-operated spanners and wrenches, and parts thereof: Adjustable, and parts thereof.

Subheading 8204.12.00, HTSUS, dutiable at 9 percent. Id.

Plaintiff timely filed 14 administrative protests challenging CBP's classification of the subject merchandise under subheading 8204.12.00, HTSUS. Am. Compl. ¶ 9; Def.'s 56.3 Statement ¶ 24. CBP denied Plaintiff's protests. Am. Compl. ¶ 9; Def.'s 56.3 Statement ¶ 25.

---

[1] All references to the HTSUS refer to the 2013 edition, the most recent version of the HTSUS in effect at the time of Plaintiff's entries of subject merchandise. See Am. Compl. ¶ 7. The 2012 edition of the HTSUS, in effect at the beginning of the period during which Plaintiff entered the subject merchandise, is the same in relevant part to the 2013 edition.

Plaintiff commenced this action to contest CBP's denial of its protests.  Am. Compl. ¶ 1.  Plaintiff alleges that the subject merchandise was improperly classified under subheading 8204.12.00, HTSUS, and is properly classifiable under subheading 8203.20.6030, HTSUS, subheading 8203.20.6060, HTSUS, or subheading 8205.70.0060, HTSUS.  Am. Compl. ¶¶ 55, 57, 61.  Specifically, Plaintiff contends that its long nose locking pliers and curved jaw locking pliers with or without wire cutter features are classifiable under subheading 8203.20.60, HTSUS, Pl.'s Resp. 14–20, 41–49, which provides:

> Files, rasps, pliers (including cutting pliers), pincers, tweezers, metal cutting shears, pipe cutters, bolt cutters, perforating punches and similar hand tools, and base metal parts thereof: Pliers (including cutting pliers), pincers, tweezers and similar tools, and parts thereof.

Subheading 8203.20.60, HTSUS, dutiable at 12 cents per dozen plus 5.5 percent.[2]

Alternatively, Plaintiff contends that its long nose locking pliers, curved jaw locking pliers

---

[2] More specifically, Plaintiff contends that its long nose locking pliers and curved jaw with wire cutter features locking pliers are classifiable under subheading 8203.20.6030, HTSUS, Pl.'s Resp. 14–17, 41–48, which provides:

> Files, rasps, pliers (including cutting pliers), pincers, tweezers, metal cutting shears, pipe cutters, bolt cutters, perforating punches and similar hand tools, and base metal parts thereof: Pliers (including cutting pliers), pincers, tweezers and similar tools, and parts thereof. Other: Other (except parts): Pliers.

Subheading 8203.20.6030, HTSUS.  Plaintiff argues in the alternative that its long nose, curved jaw, and curved jaw with wire cutter features locking pliers are classifiable under subheading 8203.20.6060, HTSUS, Pl.'s Resp. 17–20, 48–49; which provides:

> Files, rasps, pliers (including cutting pliers), pincers, tweezers, metal cutting shears, pipe cutters, bolt cutters, perforating punches and similar hand tools, and base metal parts thereof: Pliers (including cutting pliers), pincers, tweezers and similar tools, and parts thereof: Other: Other (except parts): Other.

Subheading 8203.20.6060, HTSUS.

with wire cutter features, and curved jaw locking pliers, as well as its large jaw locking

pliers,[3] are classifiable under subheading 8205.70.0060, HTSUS, Pl.'s Resp. 20–24, 49–

53, which provides:

> Handtools (including glass cutters) not elsewhere specified or included; blow torches and similar self-contained torches; vises, clamps and the like, other than accessories for and parts of machine tools; anvils; portable forges; hand- or pedal-operated grinding wheels with frameworks; base metal parts thereof: Vises, clamps and the like, and parts thereof: Vises: Other.

Subheading 8205.70.0060, HTSUS, dutiable at 5 percent ad valorem.  Id.

### JURISDICTION AND STANDARD OF REVIEW

The court has "exclusive jurisdiction of any civil action commenced to contest the

denial of a protest, in whole or in part, under [Tariff Act of 1930, as amended, 19 U.S.C.

§ 1515 (2012)]," 28 U.S.C. § 1581(a) (2012), and reviews such actions de novo.  28

U.S.C. § 2640(a)(1) (2012).

The court will grant summary judgment when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law."  USCIT R. 56(a).  In order to raise a genuine issue of material fact, it is insufficient

for a party to rest upon mere allegations or denials, but rather that party must point to

---

[3] Both Plaintiff and Defendant state that there are four styles of hand tools at issue in this case, and that those styles are referred to as "large jaw locking pliers," "curved jaw locking pliers," "long nose locking pliers with wire cutter," and "curved jaw locking pliers with wire cutter."  Am. Compl. ¶¶ 17(A)–(D); Def.'s Answer ¶ 17; Def.'s 56.3 Statement ¶ 1.  However, in Plaintiff's response, Plaintiff also references "straight jaw locking pliers," contending that these styles of pliers are also classifiable within subheading 8205.70.0060, HTSUS.  See Pl.'s Resp. 22–23.  It is unclear whether Plaintiff's reference to "straight jaw locking pliers" is an alternate description of one of the four styles of tools that are undisputedly at issue or if this reference is intended to cover a fifth style of tools.  To the extent that it is the latter, it is not undisputed that the merchandise at issue includes "straight jaw locking pliers" styles of hand tools.

sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Processed Plastic Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006); Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984).

## UNDISPUTED FACTS

Plaintiff is the importer of record of the subject merchandise in the 46 entries at issue, which entered during the period of November 11, 2012 through June 11, 2013. Am. Compl. ¶¶ 3, 7; Answer to Am. Compl. ¶¶ 3, 7, Aug. 7, 2015, ECF No. 19 ("Def.'s Answer"); Def.'s 56.3 Statement ¶ 22; Pl.'s Resp. Appendix 1, ¶ 22, Feb. 6, 2017, ECF No. 44 ("Pl.'s Resp. Def.'s 56.3 Statement"). CBP liquidated all subject entries under subheading 8204.12.00, HTSUS. Am. Compl. ¶ 8; Def.'s Answer ¶ 8; Def.'s 56.3 Statement ¶ 23; Pl.'s Resp. Def.'s 56.3 Statement ¶ 23. Plaintiff paid all liquidated duties, charges, exactions, and fees on the entries at issue prior to the commencement of this action. Am. Compl. ¶ 5; Def.'s Answer ¶ 5. Plaintiff timely filed 14 protests challenging the classification of the merchandise at issue. Def.'s 56.3 Statement ¶ 24; Pl.'s Resp. Def.'s 56.3 Statement ¶ 24.

The subject merchandise consists of four styles of locking hand tools: "large jaw locking pliers," "curved jaw locking pliers," "long nose locking pliers with wire cutter," and "curved jaw locking pliers with wire cutter." Am. Compl. ¶ 17; Def.'s Answer ¶ 17.

All of the subject tools at issue in this case are locking tools, referred to as "locking pliers,"[4] Am. Compl. ¶ 15; Def.'s Answer ¶ 15; Def.'s 56.3 Statement ¶ 9; Pl.'s Resp. Def.'s 56.3 Statement ¶ 9, such that the tool may remain locked on an object without applying continuous hand force. Def.'s 56.3 Statement ¶¶ 8, 9; Pl.'s Resp. 8; see Pl.'s Resp. Def.'s 56.3 Statement ¶ 8. The subject merchandise has two opposing metal jaws with metal teeth. Am. Compl. ¶ 20; Def.'s Answer ¶ 20.

## DISCUSSION

### I. The Meaning of the Tariff Terms

The court discerns the common and commercial meaning of the tariff terms at issue, which are "wrenches," "pliers," and "vises, clamps and the like."

### A. The Meaning of the Tariff Term "Wrenches"

The court discerns the common and commercial meaning of "wrenches" as found in subheading 8204.12.00, HTSUS, aided by dictionary definitions and industry standards. The court has also considered whether use is implicated by the tariff term.

---

[4] Plaintiff owns various U.S. Trademarks for the term "VISE-GRIP." Def.'s 56.3 Statement ¶ 2; Pl.'s Resp. Def.'s 56.3 Statement 55, ¶ 2. Plaintiff avers that, while it applies the "VISE-GRIP®" trademark to the merchandise at issue in this case, Pl.'s Resp. 7, n.1, "vise grip" is not the product name for these tools. Pl.'s Resp. Def.'s 56.3 Statement ¶ 1. Plaintiff refers to the products at issue as styles of "locking pliers." Pl.'s Resp. 7; Am. Compl. ¶ 15. Nonetheless, throughout its papers, Defendant refers to the merchandise as "vise grips," rather than "locking pliers." See, e.g., Def.'s Br. 2 ("[Plaintiff] asks this Court to classify its vise grips as pliers."), 3 ("The models of vise grips covered by the protests and entries at issue differ primarily in the shape of their jaws . . ."). Plaintiff objects to Defendant's description of its products as "vise grips," noting that "[t]here is no such thing as a 'vise grip'—there are only Plaintiff's VISE-GRIP® tools, such as VISE-GRIP® pliers, VISE-GRIP® locking pliers, VISE-GRIP® wrenches, and so forth." Pl.'s Resp. Def.'s 56.3 Statement 56.

For the reasons that follow, the term "wrench" refers to a hand tool[5] composed of a head with jaws or sockets[6] having surfaces adapted to snugly or exactly fit and engage the head of a fastener (such as a bolt-head or nut) and a frame with a singular handle with which to leverage hand pressure to turn the fastener without damaging the fastener's head.

Customs classification is governed by the General Rules of Interpretation ("GRI"), which are part of the HTSUS statute. BenQ Am. Corp. v. United States, 646 F.3d 1371, 1376 (Fed. Cir. 2011). When determining the correct classification for merchandise, the court first construes the language of the headings in question "and any relative section or chapter notes."[7] GRI 1. The terms of the HTSUS "are construed according to their

---

[5] Although a wrench can also be a power tool, see The American Heritage Dictionary of the English Language 1985 (Houghton Mifflin Co. 4th ed. 2000) (Wrench: Any of various hand or power tools, often having fixed or adjustable jaws, used for gripping, turning, or twisting objects such as nuts, bolts, or pipes.); McGraw Hill Dictionary of Scientific and Technical Terms 2305 (McGraw-Hill 6th ed. 2003) (Wrench: a manual or power tool with adapted or adjustable jaws or sockets either at the end or between the ends of a lever for holding or turning a bolt, pipe, or other object.), the tariff provision at issue is limited to "hand-operated spanners and wrenches." Heading 8204, HTSUS. The common and commercial meaning of "wrench" discerned here is accordingly limited to wrenches operated by hand.

[6] Most of the sources consulted by the court refer to a "wrench" as a hand tool having a head with jaws or sockets. See, e.g., McGraw Hill Dictionary of Scientific and Technical Terms 2305 (McGraw-Hill 6th ed. 2003) (Wrench: a manual or power tool with adapted or adjustable jaws or sockets either at the end or between the ends of a lever for holding or turning a bolt, pipe, or other object.). However, the relevant tariff heading provides separately for socket wrenches, see Subheading 8204.20.00, HTSUS ("Hand-operated spanners and wrenches (including torque meter wrenches but not including tap wrenches); socket wrenches, with or without handles, drives or extensions; base metal parts thereof: Socket wrenches, with or without handles, drives and extensions, and parts thereof"), and there is no claim here that the subject merchandise is a socket wrench. Accordingly, the court does not undertake to define the tariff term "socket wrenches."

[7] Determining the correct classification of merchandise involves two steps. First, the court

(footnote continued)

common and commercial meanings, which are presumed to be the same." Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing Simod Am. Corp. v. United States, 872 F.2d 1572, 1576 (Fed. Cir. 1989)); see BenQ Am. Corp., 646 F.3d at 1376. The court defines HTSUS tariff terms relying upon its own understanding of the terms and may "consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." Carl Zeiss, Inc., 195 F.3d at 1379. The court may also be aided by the Harmonized Commodity Description and Coding System's Explanatory Notes ("Explanatory Notes").[8] StoreWALL, LLC v. United States, 644 F.3d 1358, 1363 (Fed. Cir. 2011). In determining the common and commercial meaning of an eo nomine tariff term, the court should also consider if the tariff term nonetheless implicates the use of the article. See GRK Canada, Ltd. v. United States, 761 F.3d 1354, 1358–59 (Fed. Cir. 2014) ("GRK II").

The court must first look to the words of the tariff to discern its meaning. Defendant's preferred subheading of the HTSUS provides as follows:

> Hand-operated spanners and wrenches (including torque meter wrenches but not including tap wrenches); socket wrenches, with or without handles,

---

determines the proper meaning of any applicable tariff provisions, which is a question of law. See Link Snacks, Inc. v. United States, 742 F.3d 962, 965 (Fed. Cir. 2014). Second, the court determines whether the subject merchandise properly falls within the scope of the tariff provisions, which is a question of fact. Id. Where no genuine "dispute as to the nature of the merchandise [exists], then the two-step classification analysis collapses entirely into a question of law." Id. at 965–66 (citation omitted). Finally, the court must determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

[8] The Explanatory Notes, while not controlling, provide interpretive guidance. E.T. Horn Co. v. United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004). All citations to the Explanatory Notes are to the 2013 version, the most recently promulgated edition at the time of the entries of the subject merchandise. The 2012 version of the Explanatory Notes is the same in relevant part.

drives or extensions; base metal parts thereof: Hand-operated spanners and wrenches, and parts thereof: Adjustable, and parts thereof.[9]

Subheading 8204.12.00, HTSUS.

Here, several dictionary definitions aid the court in discerning the common and commercial meaning of a wrench. Plaintiff offers a dictionary definition which defines "wrench"[10] as "a hand tool that usually consists of a bar or a lever with adapted or adjustable jaws, lugs, or sockets either at the end or between the ends and is used for holding, twisting or turning a bolt, nut screw head, pipe or other object." Pl.'s Resp. 33 (quoting Webster's Third New International Dictionary 2639 (Philip Babcock Gove, Ph. D.

---

[9] The Explanatory Notes provide:

82.04 Hand operated spanners and wrenches (including torque meter wrenches but not including tap wrenches); interchangeable spanner sockets, with or without handles.

Hand operated spanners and wrenches:

This heading covers the following hand tools:

(1) Hand operated spanners and wrenches (e.g., with fixed or adjustable jaws; socket, box or ratchet spanners; crank handle spanners); wrenches or spanners for bicycles or cars, for coach screws, hydrants or piping (including chain type pipe wrenches); torque meter wrenches. The heading does not, however, cover tap wrenches (heading 82.05).

(2) Interchangeable spanner sockets, with or without handles, including drives and extensions.

Explanatory Notes Chapter 82, 82.04.

[10] Although Defendant's preferred subheading names spanners and wrenches, see Subheading 8204.12.00, HTSUS, there is no claim that the subject merchandise is a spanner; Defendant claims only that the merchandise is a wrench. See Def.'s Br. 9–21; Mem. L. Further Supp. Def.'s Mot. Summ. J. 5–10, Feb. 21, 2017, ECF No. 47.

and Merriam-Webster Editorial Staff eds., 2002)).[11]  The court has consulted several dictionaries which provide similar definitions for a wrench, generally, to that offered by the Plaintiff.  See, e.g., 20 The Oxford English Dictionary 619 (J.A. Simpson and E.S.C. Weiner eds., 2nd ed. 1989) (Wrench: A tool or implement of various forms, consisting essentially of a metal bar with (freq. adjustable) jaws adapted for catching or gripping a bolt-head, nut, etc., to turn it; a screw- key, screw-wrench, or spanner.); McGraw Hill Dictionary of Scientific and Technical Terms 2305 (McGraw-Hill 6th ed. 2003) (Wrench: a manual or power tool with adapted or adjustable jaws or sockets either at the end or between the ends of a lever for holding or turning a bolt, pipe, or other object.).[12]  The

---

[11] Defendant did not provide a dictionary definition for "wrench" in its motion for summary judgment, instead relying almost entirely on a prior case of this Court, Assoc. Consumers v. United States, 5 CIT 148, 565 F. Supp. 1044 (1983), in which the court determined that merchandise described as "vise grips" was properly classified as wrenches.  See Def.'s Br. 12–21; Assoc. Consumers v. United States, 5 CIT 148, 565 F. Supp. 1044 (1983).  However, Assoc. Consumers is a case interpreting the TSUS, a different statute which was replaced by the HTSUS in 1989. The two provisions at issue in Assoc. Consumers were 648.97, TSUS, and 648.85, TSUS:

> Item 648.97, TSUS, as modified by Proclamation No. 4707: "Pipe tools (except cutters), wrenches, and spanners, and parts thereof …….. 10.8% ad val"

> A Item 648.85, TSUS: "Pliers, nippers, and pincers, and hinged tools for holding and splicing wire, and parts of the foregoing: A Item 648.85 Other (except parts) …….. Free"

See Assoc. Consumers, 5 CIT at 149, ns.1, 2, 565 F. Supp. at 1044, ns.1, 2.  The court cited two dictionaries to support the common meaning of the terms at issue under that statute (Audel's New Mechanical Dictionary for Technical Trades (1960) and Webster's Third New International Dictionary (1963)).  It would be inappropriate for this court to rely on Assoc. Consumers rather than to independently consider the words of the headings in the HTSUS statute and follow the case law which governs this Court's approach in classification cases.

[12] See also The American Heritage Dictionary of the English Language 1985 (Houghton Mifflin Co. 4th ed. 2000) (Wrench: Any of various hand or power tools, often having fixed or adjustable jaws, used for gripping, turning, or twisting objects such as nuts, bolts, or pipes.); Howard H. Gerrish, Gerrish's Technical Dictionary 365 (The Goodheart-Willcox Co., Inc. 1976) (Wrench (metal): One of many varieties and types of tools used to turn nuts. Some wrenches are for fixed sizes and others are adjustable.); Wrench, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/wrench (last visited Apr. 7, 2017) (Wrench: a hand or power tool for holding, twisting, or turning an object (as a bolt or nut).).

definitions generally include reference to a handle such as a "bar" or "lever,"[13] attached to "jaws" or "sockets" which are adapted to hold and turn a fastener such as a "bolt" or "nut."

Other industry sources and standards elaborate upon the characteristics of a wrench provided in the dictionary definitions. For example, the Guide to Hand Tools: Selection, Safety Tips, Proper Use and Care emphasizes the need for the jaws to fit snugly around the fastener by explaining that "[w]renches are designed for holding and turning nuts, bolts, cap screws, plugs and various threaded parts. Quality wrenches, regardless of their type, are designed to keep leverage and intended load in safe balance." Guide to Hand Tools: Selection, Safety Tips, Proper Use and Care 1-1 (Hand Tools Institute 4th ed. 2007). This guide advises users to "[s]elect a wrench whose opening exactly fits the nut. If the wrench is not exactly the correct size for the fastener, it may damage the corners of the fastener, slip, or break." Id. Further, the American Standards for Mechanical Engineering ("ASME") provides standards for wrenches,[14] including for adjustable wrenches. Flat Wrenches, B107.100-2010 (The American

---

[13] The reference to "lever" suggests that the bar is designed to leverage pressure exerted upon it. See, e.g., Lever, Webster's Third New International Dictionary of the English Language 1300 (Philip Babcock Gove, Ph. D. and Merriam-Webster Editorial Staff eds., 1993) (Lever: 2a: a rigid piece that transmits and modifies force or motion when forces are applied at two points and it turns about a third; specifically: a bar of metal, wood, or other rigid substance used to exert a pressure or sustain a weight at one point of its length by the application of a force at a second and turning at a third on a fulcrum.).

[14] Specifically, ASME provides standards for: combination wrenches (ASME B107.6); adjustable wrenches (ASME B107.8); box wrenches, double head (ASME B107.9); wrench, crowfoot (ASME B107.21); open end wrenches, double head (ASME B107.39); wrenches, flare nut (ASME B107.40); and ratcheting box wrenches (ASME B107.66). See Flat Wrenches, B107.100-2010 (The American Society of Mechanical Engineers 2010).

Society of Mechanical Engineers 2010).[15]  The ASME standards instruct that all types of

flat wrenches shall have openings with "across-flats" or "across-corner shape," to allow

engagement of the surfaces with hexagonal or square fasteners.  See, e.g., ASME

B107.6, Combination Wrench, at 2.  ASME provides that an adjustable wrench design

shall consist:

> essentially of a frame (fixed jaw and handle), a movable jaw, and a jaw opening adjustment mechanism.  The angle of the opening of the jaw shall [allow parallel engagement of the upper and lower jaw with the object held]. When the wrench is in the full open position, the jaw shall extend to provide full contact across the flat hexagonal bar of a size that fits the full jaw opening specified for [standard opening] wrenches.  The wrench shall be designed to allow free movement of the working parts.  The wrench may be provided with or without a movable, jaw-locking device.

Id. at B107.8 at 11.  The ASME standards discuss that the surface should be smooth and

well defined, see id. at 14, and that "[t]he adjusting mechanism shall allow the movable

jaw to be positioned at any point in its range and shall include means to hold the movable

jaw in position."  Id. at 13.  The figures provided in the ASME chapter on adjustable

wrenches illustrate a tool with a singular handle.  See id. at Figs. 1, 2, 3, 5.  These industry

---

[15] Defendant argues that the ASME standard for "adjustable wrench" is not relevant because the tariff term in subheading 8204.12.00 is not "adjustable wrench," and the subheading therefore is not limited only to wrenches marketed as "adjustable wrenches" but covers wrenches which possess any adjustable feature (i.e., torque meter wrenches, whose head is fixed but can be adjusted to provide specific torque to an object.).  Mem. L. Further Supp. Def.'s Mot. Summ. J. 15–16, Feb. 21, 2017, ECF No. 47.  Defendant argues that the adjective "adjustable" "serves to distinguish the '[h]and-operated spanners and wrenches' covered in this subheading from the nonadjustable tools covered in subheading 8204.11.00."  Id. at 15.  The standards published by ASME do not mirror the HTSUS.  The ASME standards are reactive documents that the industry group publishes to respond to specific needs raised by the industry.  See About ASME Standards and Certification, ASME, https://www.asme.org/about-asme/standards (last visited Apr. 7, 2017) ("ASME develops and revises standards based on market needs through a consensus process"). Nonetheless, the ASME standard for an adjustable wrench can aid the court here because the adjustable wrench described by those standards is a tool which would fall within subheading 8204.12.00, HTSUS, even though the standard may not describe all the types of wrenches with some adjustable aspect that are covered under subheading 8204.12.00, HTSUS.

standards for an adjustable wrench focus on the presence of adjustable jaws shaped to tightly engage parallel sides of a fastener (such as a bolt or nut) and a handle which provides leverage to turn the fastener.

The court must consider whether use is implicated by the tariff terms at issue, even when the term under consideration appears to be an eo nomine term. GRK II, 761 F.3d at 1358–59. An eo nomine tariff term may implicate use in one of two ways: 1) a tariff term written as an eo nomine provision may nonetheless be controlled by use and, if it is, the court should declare it as such,[16] id. at 1359, n.2; see also StoreWALL, LLC, 644 F.3d at 1365–67 (Dyk, J., concurring); or 2) a tariff term may imply that the use of the object is of "paramount importance" to its identity such that articles with the requisite physical characteristics will nonetheless be excluded if they are in fact designed and intended for

---

[16] In GRK II, the Court of Appeals for the Federal Circuit stated that, in such cases, "[c]lassification of subject articles may then need to reach the Additional Rules of Interpretation, which distinguish the treatment of articles based on whether tariff classifications are controlled by principal or actual use." GRK II, 761 F. 3d at 1359, n.2 (citing Primal Lite, Inc. v. United States, 182 F.3d 1362, 1363 (Fed. Cir. 1999); see also StoreWALL, LLC v. United States, 644 F.3d 1358, 1365–67 (Fed. Cir. 2011) (Dyk, J., concurring)); GRK Canada, Ltd. v. United States, 773 F.3d 1282, 1287 (Fed. Cir. 2014) (Wallach, J., dissenting from denial of rehearing en banc):

> [I]f an eo nomine heading did "inherently suggest[ ] a type of use," it would be proper to convert it to a use provision. Therefore, if, as the majority holds, the subheadings at issue are truly defined by use, the majority should have reconsidered the parties' legal stipulation that the relevant subheadings are eo nomine.

GRK Canada, Ltd., 773 F.3d at 1287 (Wallach, J., dissenting from denial of rehearing en banc) (internal citation omitted); see, e.g., BASF Corp. v. United States, 30 CIT 227, 245, 427 F. Supp. 2d 1200, 1216 (2006) (explaining that "[u]se may be implied from the phrase 'for gasoline,' for without the implied term the statutory phrase has no meaning.").

another use.[17]  GRK II, 761 F.3d at 1358 (citing United States v. Quon Quon Co., 46 CCPA 70, 73 (1959).[18]

Here, although a wrench may indeed be designed for a use, nothing about the tariff term for "wrenches" suggests a type of use such that the court should declare the tariff term one controlled by use.  GRK II, 761 F.3d at 1358–59 (quoting Carl Zeiss, Inc., 195 F.3d at 1379).  The word "use" or similar words such as "for" or "of a kind" do not appear in the tariff term.  See Clarendon Mktg., Inc. v. United States, 144 F.3d 1464, 1467 (Fed. Cir. 1998).  Furthermore nothing in the term itself, including the Section and Chapter Notes or the Explanatory Notes,[19] indicates that, as a matter of law, the use of articles classified under the provision would outweigh the importance of the physical characteristics of the item.  See Primal Lite, Inc. v. United States, 182 F.3d 1362, 1363–64 (Fed. Cir. 1999); see GRK II, 761 F.3d at 1359, n.2 (citing StoreWALL, 644 F.3d at 1365–67 (Dyk, J., concurring)).  Nothing indicates that an object must be considered a

---

[17] If the court determines that the intended use is of paramount importance, the use should be considered along with the physical characteristics as part of the definition of the tariff term.  GRK II, 761 F.3d at 1358–61; United States v. Quon Quon Co., 46 CCPA 70, 73–74 (1959); see also StoreWALL, LLC, 644 F.3d at 1365–67 (Dyk, J., concurring) (discussing Processed Plastic, 473 F.3d at 1169–70).

[18] A tariff provision is one controlled by use when the definition of the term turns on its use, such that the language in the tariff term (or the Section or Chapter Notes) indicates that the use of covered articles is more important than any physical characteristics.  Primal Lite, Inc. v. United States, 182 F.3d 1362, 1363–64 (Fed. Cir. 1999) (finding strands of electric lights with certain decorative plastic covers not classifiable in a subheading for "lighting sets of a kind used for Christmas trees," because use in connection with Christmas trees must be the predominant or principal use of goods classifiable within that subheading, and commercially fungible goods were predominantly used for decorating not associated with the Christmas holidays or Christmas trees.).

[19] The pertinent provision of the Explanatory Notes states that the heading covers tools including "Hand operated spanners and wrenches (e.g., with fixed or adjustable jaws; socket, box or ratchet spanners; crank handle spanners)."  Explanatory Notes Chapter 82, 82.04.

wrench if it can be used to wrench or turn a fastener. Therefore, as a matter of law, the tariff term for "wrenches" is an eo nomine term, not one controlled by use.

This court must also consider whether use is of "paramount importance." See GRK II, 761 F.3d at 1358–59 (quoting Quon Quon Co., 46 CCPA at 73). To say that use is of paramount importance is not to say that a product has a use. All products have uses. Indeed the physical characteristics of a product will normally reflect the fact that a product has been designed for a use. Therefore, the court may need to explore the design and intended use of the article conveyed by a tariff term to identify the requisite physical characteristics and exclude articles with overlapping physical characteristics that are nonetheless designed and intended for other uses. See Quon Quon Co., 46 CCPA at 73–74 (finding that woven rattan imports were not baskets because they were designed for use as patio furniture).[20] Although design and intended use is implicated in all tariff terms, it will only be of paramount importance when, as a factual matter, a product that satisfies the physical requirements of a tariff term is in fact designed and intended for another use. See id. A wrench is designed for turning fasteners without damaging the fastener's head. A wrench must possess certain physical characteristics (a frame with a singular handle; a head with jaws or sockets having surfaces that snugly or exactly fit and

---

[20] In Quon Quon, the Court of Customs and Patent Appeals construed the tariff term "baskets" to imply a use for carrying or containing objects, thus excluding woven rattan imports designed for use as table tops. Quon Quon Co., 46 CCPA at 73–74. The court did not discuss the proper use of products actually covered by the "baskets" provision, instead focusing on the fact that the imported products at issue were used as patio furniture to determine that the imports were not classifiable as baskets. Implicit in this analysis is an understanding of "baskets" to be used for something other than as patio furniture. Id.

engage the head of a fastener) that are a function of the intended use of a wrench to exert pressure on the fastener to turn it without damaging the fastener's head.[21]

Based on the foregoing, the court finds as a matter of law that a wrench is a hand tool that has a head with jaws or sockets having surfaces adapted to snugly or exactly fit and engage the head of a fastener (such as a bolt-head or nut) and a singular handle[22] with which to leverage hand pressure to turn the fastener without damaging the fastener's head.

## B. The Meaning of the Tariff Term "Pliers"

The court discerns the common and commercial meaning of "pliers" as it appears in subheading 8203.20.6030, HTSUS, aided by dictionary definitions and industry standards. The court has also considered whether use is implicated by the tariff term. As discussed below, the term "pliers" refers to a versatile hand tool with two handles and two jaws that are flat or serrated and are on a pivot, which must be squeezed together to enable the tool to grasp an object.

Subheading 8203.20.6030, HTSUS, provides as follows:

Files, rasps, pliers (including cutting pliers), pincers, tweezers, metal cutting shears, pipe cutters, bolt cutters, perforating punches and similar hand tools, and base metal parts thereof: Pliers (including cutting pliers), pincers, tweezers and similar tools, and parts thereof: Other (except parts): Pliers.

---

[21] Use would be of paramount importance in a classification involving the tariff term for "wrench" if, as a factual matter, at issue was an article possessing the requisite physical characteristics of a wrench and an intended use departing from the intended use implicit in the design of a wrench. See Quon Quon Co., 46 CCPA at 73–74.

[22] Defendant emphasizes that this Court previously determined that a wrench does not necessarily have only one handle. Mem. L. Further Supp. Def.'s Mot. Summ. J. 13–15, Feb. 21, 2017, ECF No. 47 (citing Assoc. Consumers, 565 F. Supp. at 1045 (finding that the "presence of two handles is not inconsistent with classification as wrenches" under the TSUS). As previously discussed, Assoc. Consumers is not binding on this court. Further, this court has surveyed current definitions and industry standards which instruct that a wrench has a singular handle.

Subheading 8203.20.6030, HTSUS.[23]  Dictionary definitions aid the court in discerning the common and commercial meaning of pliers.  Plaintiff offers the following definition for "pliers": "a small instrument with two handles and two grasping jaws, usually long and roughened, working on a pivot; used for holding small objects and cutting, bending, and shaping wire."[24]  Pl.'s Resp. 42 (quoting McGraw-Hill Dictionary of Scientific and Technical Terms 1618 (McGraw-Hill 6th ed. 2003)).  The court has also consulted various additional dictionaries which provide similar definitions for pliers to the definition offered by Plaintiff.  See, e.g., The American Heritage Dictionary of the English Language 1349 (Houghton Mifflin Co. 4th ed. 2000) (Pliers: A variously shaped hand tool having a pair of pivoted jaws, used for holding, bending, or cutting.); Pliers, Oxford English Dictionary, oed.com, http://www.oed.com/view/Entry/145833?redirectedFrom=pliers#eid (last visited Apr. 7, 2017) (Pliers: Pinchers with gripping jaws, usually having serrated surfaces which

---

[23] The Explanatory Notes provide:

> (B) Pliers (including cutting pliers), pincers, tweezers and similar tools, including:
>
>> (1) Pliers (e.g., seal closers and pliers, sheep ear and other animal marking pliers, gas pipe pliers, pliers for inserting or extracting cotter pins, eyelet and eyelet closing pliers; plier type saw sets).

Explanatory Notes Chapter 82, 82.03.

[24] Although Defendant did not proffer a definition of the term "pliers," Defendant claims in its Statement of Facts as a fact that "A plier is 'a hand tool that grips objects by means of an input force [that] is applied by hand' and the operator's hand 'force is transmitted to the [gripped] object.'"  Def.'s 56.3 Statement ¶ 4 (citing Deposition testimony of Brett Lucus, the principal design engineer at Irwin Tools, of June 14, 2016 (Def.'s Br. Ex. 2)).  Plaintiff denies that this information is factual and points out that the deponent offering the definition was not qualified as an expert.  Pl.'s Resp. Def.'s 56.3 Statement ¶ 4 (citing Lucus Deposition (Def.'s Br. Ex. 2)).

close flat, used for bending or cutting wire, gripping or turning small objects, etc.).[25]  The definitions center around two long, often-serrated jaws on a pivot which close together to grasp an object.

Industry sources and standards confirm the characteristics of pliers emphasized in the dictionary definitions.  The Guide to Hand Tools provides that "[t]here are many types and sizes; each designed for specific uses, although their versatility makes some pliers adaptable for many jobs."  Guide to Hand Tools: Selection, Safety Tips, Proper Use and Care 2-1 (Hand Tools Institute 4th ed. 2007).  ASME provides standards for many types of pliers, specifying the general and distinguishing physical characteristics of each.[26]  Pliers, B107.500-2010 (The American Society of Mechanical Engineers 2010).  For all types of pliers, ASME instructs that plier handles "shall be shaped as to afford a comfortable grip, and shall be free from rough edges and sharp corners" and specifies

---

[25] See also Webster's Third New International Dictionary 1741 (Philip Babcock, Ph.D. and Merriam-Webster Editorial Staff eds., 1993) (Pliers: A small pincers usu. with long roughened jaws for holding small objects or for bending and cutting wire — often used with pair); 11 The Oxford English Dictionary 1050 (J.A. Simpson and E.S.C. Weiner eds., 2nd ed. 1989) (Pliers: Pincers, usually small, having long jaws mostly with parallel surfaces, sometimes toothed; used for bending wire, manipulating small objects, etc.);  Howard H. Gerrish, Gerrish's Technical Dictionary 257 (The Goodheart-Willcox Co., Inc. 1976) (Pliers (metal): A pincer like tool for holding small objects. They are manufactured in a large variety of shapes, types and sizes for special purposes. Some have cutting edges.); Pliers, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/pliers (last visited Apr. 7, 2017) (Pliers: a small pincers for holding small objects or for bending and cutting wire.).

[26] Specifically, the ASME standards on pliers include specifications for: diagonal cutting and end cutting pliers (ASME B107.11); long nose, long reach pliers (ASME B107.13); metal cutting sheers (ASME B107.16); wire twister pliers (ASME B107.18); retaining ring pliers (ASME B107.19); lineman's, iron worker's, gas, glass, fence, and battery pliers (ASME B107.20); electronic cutters and pliers (ASME B107.22); multiple position, adjustable pliers, including adjustable joint, angle nose pliers, including those with straight, serrated jaws; curved, serrated jaws; parrot nose jaws; and straight, smooth jaws; as well as slip joint, combination jaw pliers with straight or bent nose pliers (ASME B107.23); and locking, clamp, and tubing pinch-off pliers (ASME B107.24).  See Pliers, B107.500-2010 (The American Society of Mechanical Engineers 2010).

that "[h]andle surfaces shall be smooth, knurled, impressed, or furnished with comfort grips."  See, e.g., ASME B107.23, Pliers: Multiple Position, Adjustable, at 95.  Further, the standards for several types of pliers emphasize the existence of a permanent fastener connecting the handles of the pliers.  See, i.e., id. at 95 ("Pliers' halves shall be joined in a permanent manner using a fastener, rivet, or other suitable means."); ASME B107.11, Pliers: Diagonal Cutting and End Cutting, at 3 ("There shall be no excessive sideways movement, play, or  other indication of looseness when pliers are opened or closed that will affect their function."); ASME B107.20, Pliers: Lineman's, Iron Worker's, Gas, Glass, Fence, and Battery, at 64 ("Pliers shall be joined in a permanent manner with a fastener. The joint shall ensure uniform smooth movement with minimum looseness and sideplay when opening the jaw.").[27]

---

[27] ASME also provides industry standards for locking pliers.  See Pliers, B107.500-2010 (B107.24) (The American Society of Mechanical Engineers 2010).  Defendant contends that the ASME standards for locking pliers are not helpful guidance in this instance, Mem. L. Further Supp. Def.'s Mot. Summ. J. 16–17, Feb. 21, 2017, ECF No. 47 ("The fact that a tool once primarily known as a 'wrench' is now described by ASME as a 'locking plier' should not change how the Court analyzes this tool for classification purposes."), and contends that the court should look only to the ASME standards on conventional pliers.  Def.'s Mot. 23.  ASME does not mirror the HTSUS, and is a reactive document, developed and revised based on industry needs.  See About ASME Standards and Certification, ASME, https://www.asme.org/about-asme/standards (last visited Apr. 7, 2017) ("The ASME standards are created by volunteers in the industry with relevant technical expertise . . . . ASME develops and revises standards based on market needs through a consensus process"); Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1361 (Fed. Cir. 2001).  The HTSUS does not mention locking pliers.  Nonetheless, ASME provides standards on all types of pliers and the standards for locking pliers are included within the general section on pliers.  See Pliers, B107.500-2010 (B107.24).  The court may rely on industry standards to guide in the definition of tariff terms.  Rocknel Fastener, Inc. at 1361 ("Standards promulgated by industry groups such as ANSI, ASME, and others are often used to define tariff terms. . .").  ASME instructs that locking pliers

(footnote continued)

There is no indication that the tariff term for pliers is controlled by use. See GRK

II, 761 F.3d at 1358–59 (quoting Carl Zeiss, Inc., 195 F.3d at 1379). The words "use,"

"for," or other words or phrases that imply use do not appear in the provision to indicate

that covered tools must be put to a certain use. Clarendon Mktg., Inc. v. United States,

144 F.3d at 1467. Furthermore, nothing in the term itself, including the Section and

Chapter Notes or the Explanatory Notes, indicates that, as a matter of law, the use of an

article classified under the provision would outweigh the importance of the physical

characteristics of the article.[28] See Primal Lite, Inc., 182 F.3d at 1363–64; GRK II, 761

F.3d at 1359, n.2. Therefore, as a matter of law, the tariff term for pliers is an eo nomine

term, not one controlled by use.

As discussed above, although design and intended use is implicated in all tariff

terms, use will only be of paramount importance when, as a factual matter, a product that

satisfies the physical requirements of a tariff term is designed and intended for another

use. See id. at 1358–59 (quoting Quon Quon Co., 46 CCPA at 73–74). Pliers possess

---

shall have straight, curved, long nose, or bent nose jaws. . . . Pliers shall have one fixed jaw and one adjustable jaw. The jaws shall be integral with or securely fixed to the pliers. There shall be no motion of the gripping surface of either jaw other than that produced by manual operation of the pliers. The design of the toggle or cam mechanism shall be such that when the movable handle is released from the closed and locked position, the jaw tips shall move apart to the full open position.

ASME B107.500-2010 (B107.24). The standards specify that "[t]here shall be no motion of the gripping surface of either jaw other than that produced by manual operation of the pliers," and that locking "[p]liers shall be provided with a toggle or cam device having an adjustable mechanism designed so that the jaws can be clamped and locked." Id.

[28] The pertinent provision of the Explanatory Notes states that the heading covers tools including "Pliers (e.g., seal closers and pliers, sheep ear and other animal marking pliers, gas pipe pliers, pliers for inserting or extracting cotter pins, eyelet and eyelet closing pliers; plier type saw sets)." Explanatory Notes Chapter 82, 82.03.

certain physical characteristics (two handles that can be squeezed together; two jaws that are flat or serrated and on a pivot, which may be locked or continuously gripped together to hold the object while using the tool) that are a function of their design and intended use to grasp an object.

The court finds as a matter of law that the common and commercial meaning of "pliers" refers to a versatile hand tool with two handles and two jaws that are flat or serrated and are on a pivot, which must be squeezed together to enable the tool to grasp an object; the jaws may, or may not, lock together to hold the object while using the tool.

### C. The Meaning of the Tariff Terms "Vises, Clamps and the Like"

The term "vises, clamps and the like" refers to tools with a frame and two opposing jaws, at least one of which is adjustable, which are tightened together with a screw, lever, or thumbnut, to press firmly on an object and thereby hold the object securely in place while the user is working. Plaintiff's proposed alternative, subheading 8205.70.0060, HTSUS, provides:

> Hand tools (including glass cutters) not elsewhere specified or included; blow torches and similar self-contained torches; vises, clamps and the like, other than accessories for and parts of machine tools; anvils; portable forges; hand- or pedal- operated grinding wheels with frameworks; base metal parts thereof: Vises, clamps and the like, and parts thereof: Vises: Other.

Subheading 8205.70.0060, HTSUS, dutiable at 5 percent.[29]

---

[29] In contending that its subject merchandise is alternatively classifiable within subheading 8205.70.0060, HTSUS, Plaintiff describes this subheading as "Vises, clamps and the like, and parts thereof: Other," and throughout its brief Plaintiff contends that this alternative is suitable because Plaintiff's merchandise possesses certain characteristics of vises and clamps,

(footnote continued)

Defendant and Plaintiff supplied the same definition for "vise," See Pl.'s Resp. 51 (citing McGraw-Hill Dictionary of Scientific and Technical Terms 2263 (McGraw-Hill 6th ed. 2003)); Def.'s Br. 26 (citing McGraw-Hill Dictionary of Scientific and Technical Terms 1588 (Daniel N. Lapedes ed., 1st ed. 1974)) (Vise: a tool consisting of two jaws for holding a workpiece; opened and closed by a screw, lever, or cam mechanism.), and essentially the same definition for "clamp." See Pl.'s Resp. 51 (citing McGraw-Hill Dictionary of Scientific and Technical Terms 401 (McGraw-Hill 6th ed. 2003) (Clamp: a tool for binding or pressing two or more parts together, by holding them firmly in their relative positions.)); Def.'s Br. 25–26 (citing McGraw-Hill Dictionary of Scientific and Technical Terms 274 (Daniel N. Lapedes ed., 1st ed. 1974) (Clamp: a tool for binding or pressing two or more parts together, holding them firmly in their relative position.)). The court has consulted several additional dictionaries which provide similar definitions for vises and clamps to those offered by the parties. See, e.g., The American Heritage Dictionary of the English Language 1923 (Houghton Mifflin Co. 4th ed. 2000) (Vise: a clamping device, usually consisting of two jaws closed or opened by a screw or lever, used in carpentry or metalworking to hold a piece in position); The American Heritage Dictionary 341 (Houghton Mifflin Co. 4th ed. 2000) (Clamp: 1: any of various devices used to join, grip, support, or compress mechanical or structural parts; 2: any of various tools with opposing,

---

emphasizing the clamping qualities of Plaintiff's tools. See, e.g., Pl.'s Resp. 21–23. However, subheading 8205.70.0060, HTSUS, is specific to vises: "Vises, clamps and the like, and parts thereof: Vises: Other." Subheading 8205.70.0060, HTSUS.

It is unclear to the court whether Plaintiff argues: that its merchandise is vises, classifiable under subheading 8205.70.0060, HTSUS; that its merchandise is "clamps and the like," classifiable under 8205.70.0090 ("Vises, clamps and the like, and parts thereof: Other (including parts))"; or that its merchandise is either vises or clamps, and thus classifiable under either subheading 8205.70.0060, HTSUS, or 8205.70.0090, HTSUS.

often adjustable sides or parts for bracing objects or holding them together.).[30]  Further, the Guide to Hand Tools provides that vises are usually mounted on "firm support, to hold the material to be worked on," noting that vises "can be used for a wide variety of work." Guide to Hand Tools: Selection, Safety Tips, Proper Use and Care 7-1 (Hand Tools Institute 4th ed. 2007).  The Guide to Hand Tools elaborates upon various types of vises, most of which are secured to a bench or table top for use but some, such as the hand vise, are not.  See id. at 7-1–7-6.  The Guide to Hand Tools describes clamps as "tools that are used for temporarily holding work securely in place," and elaborates upon various types of clamps, most of which are comprised of a frame and a screw which is tightened on an object held between the two sides of the frame.  Id. at 8-1–8-4.[31]  The definitions for both vises and clamps center on a frame or brace with two sides that are tightened together, usually using a screw, on an object to hold it firmly in place.

There is no indication that the tariff term for vises and clamps, subheading 8205.70.0060, HTSUS, is controlled by use.  See GRK II, 761 F.3d at 1358–59 (quoting

---

[30] See also Vise, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/vise (last visited Apr. 7, 2017) (Vise: 1: any of various tools with two jaws for holding work that close usually by a screw, lever, or cam.); Clamp, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/clamp (last visited Apr. 7, 2017) (Clamp: 1: a device designed to bind or constrict or to press two or more parts together so as to hold them firmly; 2: any of various instruments or appliances having parts brought together for holding or compressing something.); 2 Shorter Oxford English Dictionary 3526 (Oxford University Press 6th ed. 2007) (Vice: 3: a device consisting of two jaws moved by turning a screw, used to clamp an object being filed, sawn, etc., in position and freq. attached to a workbench.); 1 Shorter Oxford English Dictionary 421 (Oxford University Press 6th ed. 2007) (Clamp: a brace, clasp, or band, usu. of rigid material, used for strengthening or fastening things together; . . . [a]n appliance or tool with parts which may be brought together by a screw etc. for holding or compressing.); Howard H. Gerrish, Gerrish's Technical Dictionary 78, 168 (The Goodheart-Willcox Co., Inc. 1976) (Hand vise (metal): a clamping device for holding small objects in the hand while working on them; Clamp (metal): a slotted metal strap, used for holding work during machining.).

[31] The parties did not provide an ASME industry standard for either vises or clamps, and the court has been unable to locate such a standard.

Carl Zeiss, Inc., 195 F.3d at 1379).  The words "use," "for," or other words that imply a certain use do not appear in the provision to indicate that covered tools must be put to a certain use.  See BASF Corp. v. United States, 30 CIT at 245, 427 F. Supp. 2d at 1216; Clarendon Mktg., Inc., 144 F.3d at 1467.  The Explanatory Notes provide that subheading 8205.70.0060, HTSUS, covers "Vi[s]es, clamps and the like, including hand vi[s]es, pin vi[s]es, bench or table vi[s]es, for joiners or carpenters, locksmiths, gunsmiths, watchmakers, etc."  Explanatory Notes Chapter 82, 82.05.  Although the phrase mentions the provision covers tools "for" certain craftsmen, the description does not indicate an intended limitation of the use of the product.  See BASF Corp. v. United States, 30 CIT at 245, 427 F. Supp. 2d at 1216.  Nothing in the language of the provision itself, including the Section and Chapter Notes or the Explanatory Notes, indicates that, as a matter of law, the use of articles classified under the provision would outweigh the importance of the physical characteristics of the item.  See Primal Lite, Inc, 182 F.3d 1363–64; GRK II, 761 F.3d at 1359, n.2.  Therefore, as a matter of law, subheading 8205.70.0060, HTSUS, covering "vises, clamps and the like" is an eo nomine term, not one controlled by use.

Vises and clamps are designed to close tightly on an object to hold the object in place.  This intended use is reflected in the articles' physical features, consisting of a frame with two opposing jaws that tighten securely together with a screw or nut.  See id. (citing Quon Quon Co., 46 CCPA at 73–74).

The court finds as a matter of law that the common and commercial meaning of the tariff term for "vises, clamps and the like" is a tool composed of a frame and two opposing jaws, at least one of which is adjustable, which are tightened together usually

with a screw, lever, or thumbnut, to press firmly on an object and hold the object securely in place while the user is working.

## II. Defendant Is Not Entitled to Summary Judgment

Defendant has not established undisputed facts showing that the subject merchandise possesses the qualities of a wrench.[32]  Specifically, Defendant has not established that Plaintiff's tools have a head with jaws having surfaces adapted to snugly or exactly fit and engage the head of a fastener (such as a bolt-head or nut).  Defendant has not established that Plaintiff's tools have a singular handle[33] with which to exert pressure to turn a fastener without damaging the fastener's head.

---

[32] Despite moving for summary judgment, Defendant has denied information sufficient to form a belief with respect to many factual assertions in Plaintiff's complaint that relate to the physical attributes of the products in question.  See, e.g., Am. Compl. ¶ 21 ("The jaws of the subject merchandise are connected by a joint."); Def.'s Answer ¶ 21 ("Denies for lack of information or knowledge sufficient to form a belief as to what plaintiff means by '[t]he jaws . . . are connected by a joint.'"); Am. Compl. ¶ 22 ("The subject merchandise includes a spring mechanism."); Def.'s Answer ¶ 22 ("Denies for lack of information or knowledge sufficient to form a belief as to what plaintiff means by 'spring mechanism.'"); Am. Compl. ¶ 23 ("The subject merchandise does not have a jaw opening adjustment mechanism."); Def.'s Answer ¶ 23 ("Denies for lack of information or knowledge sufficient to form a belief as to what plaintiff means by a 'jaw opening adjustment mechanism.'"); Am. Compl. ¶ 24 ("The subject merchandise does not have an adjusting mechanism that allows a movable jaw to be positioned at various points in a range."); Def.'s Answer ¶ 24 ("Denies for lack of information or knowledge sufficient to form a belief as to what plaintiff means by an 'adjusting mechanism that allows a movable jaw to be positioned at various points in a range.'"); Am. Compl. ¶ 25 ("The subject merchandise does not have a fixed frame."); Def.'s Answer ¶ 25 ("Denies for lack of information or knowledge sufficient to form a belief as to what plaintiff means by a 'fixed frame.'")

Moreover, Defendant's Rule 56.3 Statement of Material Facts asserts very little by way of describing the physical attributes of the subject merchandise, instead including statements that amount to legal argument.  See, e.g., Def.'s 56.3 Statement ¶¶ 3 ("Since at least 1983, CBP has classified vise grips as wrenches"), 4 ("A plier is 'a hand tool that grips objects by means of an input force [that] is applied by hand' and the operator's hand force is transmitted to the [gripped] object,'" quoting the deposition testimony of Plaintiff's principal design engineer (Lucus Deposition, Def.'s Br. Ex. 2)).

[33] Defendant cites the deposition testimony of Plaintiff's affiant Mr. Lucus to suggest that Plaintiff

(footnote continued)

Defendant's entire argument rests upon its reliance on <u>Assoc. Consumers v. United States</u>, 5 CIT 148, 565 F. Supp. 1044 (1983), in which the court determined that merchandise described as "vise grips" was properly classified as wrenches. <u>See</u> Def.'s Br. 12–21; <u>Assoc. Consumers v. United States</u>, 5 CIT 148, 565 F. Supp. 1044 (1983).[34] However, <u>Assoc. Consumers</u> is a case interpreting the TSUS, a different statute which was replaced by the HTSUS in 1989. The Court of Appeals for the Federal Circuit has held that the Court's prior determination of a common meaning of a term, based on an interpretation of a tariff provision under the TSUS, is not controlling as to a determination under the HTSUS. <u>JVC Co. of Am., Div. of US JVC Corp. v. United States</u>, 234 F.3d 1348, 1354–55 (Fed. Cir. 2000); <u>see</u> <u>Mitsubishi Int'l Corp. v. United States</u>, 182 F.3d 884, 886 (Fed. Cir. 1999).

---

has admitted that its tools have only one handle. Mem. L. Further Supp. Def.'s Mot. Summ. J. 13–14, Feb. 21, 2017, ECF No. 47. In his deposition, Mr. Lucus referred to one model of the tools as having "one top handle and a bottom lever." <u>See id.</u>, quoting Lucus Deposition (Def.'s Br. Ex. 2). Plaintiff emphasizes that Mr. Lucus was not qualified as an expert. Pl.'s Resp. Def.'s 56.3 Statement ¶ 4. The court has inspected Plaintiff's physical samples which are admissible for the purposes of summary judgment and finds Defendant has not established that the styles of tools at issue have only one handle. <u>See</u> Pl.'s Cert. of Filing and Service of Physical Exhibit or Item, Jan. 3, 2017, ECF No. 40 (providing photographs of each of the physical samples submitted).

[34] The opinion itself is fewer than 700 words the pertinent part of the court's analysis provides "In making its determination of common meaning, the court has reviewed the case law, examined dictionaries and evaluated the testimony of the witnesses. <u>See</u> <u>Schott Optical Glass, Inc. v. United States</u>, 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979). This case is not binding on the court, and the fact that it interpreted a different statute relying upon lexicographic sources from over 50 years ago serves to diminish its persuasive authority. Defendant correctly notes that the decision was affirmed by the Court of Appeals for the Federal Circuit, but the Federal Circuit affirmed without opinion and the affirmance is therefore nonprecedential pursuant to Federal Circuit Local Rule 32.1(d). <u>See</u> Fed. Cir. Local R. 32.1(d) (nonprecedential decisions by the Federal Circuit do not have the effect of non-binding precedent); <u>see also</u> Federal Rule of Civil Procedure 32.1 ("A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as . . . 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."). "It is error to assume that a nonprecedential order or opinion provides support for a particular position or reflects a new or changed view held by this court." <u>Hamilton v. Brown</u>, 39 F.3d 1574, 1581 (Fed. Cir. 1994).

Defendant cites GRK II to support its argument that heading 8204, HTSUS, the tariff provision for wrenches, "inherently suggests the use of wrenching" such that Plaintiff's merchandise is properly classified within the term because the tools "are designed to be used to wrench." Def.'s Br. 23; see Mem. L. Further Supp. Def.'s Mot. Summ. J. 7–8, Feb. 21, 2017, ECF No. 47 ("Def.'s Reply"). It is not clear whether Defendant is arguing that the term "wrench" makes the provision controlled by use or that the mere use of a product to perform a task of a wrench makes a product a wrench. See Def.'s Br. 23; Def.'s Reply 7–8. Nonetheless, Defendant's argument misunderstands GRK II. A tariff provision is not one controlled by use per GRK II simply because the definition of the covered article may reference the article's use. GRK II faulted the Court of International Trade for failing to consider whether the tariff provision for "wood screws" suggested either a provision controlled by use or one where use was of paramount importance.[35] GRK II, 761 F.3d at 1358–61. Here, there is no indication in the tariff provision that "wrenches" is controlled by use. Nor is paramount use as envisioned by GRK II implicated here.

Defendant also fails to establish as a matter of law that the subject merchandise is not pliers or vises, clamps or the like. Pliers are a hand tool with two handles and two flat or serrated jaws on a pivot, which are squeezed together with the handles to enable the tool to grasp an object. Vises, clamps and the like are tools with a frame or brace and

---

[35] But as the Court's citation to StoreWALL makes clear, merely acknowledging that the Court should consider whether use is implicated is not the same as determining that a provision is controlled by use. See also StoreWALL v. United States, 644 F.3d 1358, 1365–66 (Fed. Cir. 2011) (Dyk, J., concurring) (explaining that a tariff provision that does not include the language "used for" may still be controlled by use if the provision turns on use.).

two opposing jaws, at least one of which is adjustable, which are tightened together with a screw, lever, or thumbnut, to press firmly on an object and hold the object securely in place while working.  Although Plaintiff has not moved for summary judgment and very few facts are undisputed,[36] the court has examined Plaintiff's physical samples of the subject merchandise and, for purposes of summary judgment, the court deems these samples admissible.[37]  See Pl.'s Cert. of Filing and Service of Physical Exhibit or Item, Jan. 3, 2017, ECF No. 40 (providing photographs of each of the physical samples submitted).  Upon inspection of the samples, the court determines that the tools may fit within the tariff subheadings 8203.20.6030 or 8203.20.6060, HTSUS, for "Pliers," or 8205.70.0060 or 8205.70.0090, HTSUS, for "Vises, clamps and the like."  The court need

---

[36] Plaintiff has not moved for summary judgment to determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).  Nonetheless, the Plaintiff counters against the Defendant's motion by arguing that, not only is the classification for wrench inapposite, but that other classifications are correct.

[37] Plaintiff provided ten physical samples of its merchandise, see Pl.'s Cert. of Filing and Service of Physical Exhibit or Item, Jan. 3, 2017, ECF No. 40, including a sample of each of the four styles of tools at issue (i.e., large jaw locking pliers, curved jaw locking pliers, long nose locking pliers with wire cutter, and curved jaw locking pliers with wire cutter).  See, e.g., Physical Samples 1, 5, 9, 10.

   The subject merchandise appears to include many models of tools within these four styles although the exact number of models is not clear from the documents submitted by the parties. See Pl.'s Resp. Def.'s 56.3 Statement ¶ 15; Def.'s 56.3 Statement ¶ 15.  Nine of the ten physical samples have model numbers which the parties agree are covered by the protests.  See Def.'s 56.3 Statement ¶ 15; Pl.'s Resp. Def.'s 56.3 Statement ¶ 15.  Defendant alleges that Plaintiff incorrectly avers that models of its "multi-tool" are at issue in this case; Defendant also takes issue with Plaintiff's inclusion of Physical Sample 7, a multi-tool, arguing that "Irwin Tools failed to identify the multi-tool either by name or by part number in its protests, summons or complaint," and that the court accordingly "lacks subject matter jurisdiction over any claim that plaintiff may raise in this case regarding the multi-tool under § 1581(a)."  Def.'s Br. 3, n.2.  Plaintiff's Physical Sample 7 appears to have a stock keeping unit number (SKU # 4935579) that Plaintiff states is included in the protests.  See Pl.'s Resp. Def.'s 56.3 Statement ¶ 15; Pl.'s Resp. 81.

not reach that issue as all that is before the court is the Defendant's motion, which is denied.

## CONCLUSION

The Defendant has failed to show that undisputed facts support summary judgment in its favor. Although the court has determined that the relevant tariff terms are defined in a manner that would suggest that the subject merchandise is classifiable within one of the Plaintiff's preferred terms, the Plaintiff has neither moved for summary judgment pursuant to USCIT Rule 56 nor filed a statement of material facts as to which there are no genuine issues to be tried pursuant to USCIT Rule 56.3. Accordingly, pursuant to USCIT Rules 1 and 56(b), the court will grant leave to the Plaintiff to file a motion for summary judgment, and corresponding statement of material facts as to which there are no genuine issues to be tried, out of time, should the Plaintiff wish to do so.

In accordance with the foregoing, it is hereby

**ORDERED** that Defendant's motion for summary judgment is denied; and it is further

**ORDERED** that Plaintiff shall inform the court in writing within 7 days whether it intends to move for summary judgment; and it is further

**ORDERED** that:

1) If Plaintiff intends to move for summary judgment, Plaintiff shall so move on or before 21 days from the date Plaintiff notifies the court of its intention to so move; or

2)  If Plaintiff does not intend to move for summary judgment, the parties shall consult and file an order for further proceedings in this matter on or before 21 days from the date Plaintiff notifies the court of its intention not to move for summary judgment.


       /s/ Claire R. Kelly
      Claire R. Kelly, Judge



Dated: April 12, 2017
      New York, New York